Taylor *v.* Fleet.

SAME TERM.    *Before the same Justice.*

TAYLOR and wife *vs.* FLEET and TAYLOR.

Where a person about to purchase a farm was ignorant of the actual character and capabilities of the land, and had no means of obtaining such knowledge except by information to be derived from others; and the owner, with a knowledge that the purchaser's object was to obtain an early farm, and that his farm was not as early as the lands lying in the neighborhood, represented to such purchaser "that there was no earlier land any where about there," and the latter, relying upon the truth of that representation, made the purchase; and after ascertaining by actual experiment, that the land was not what it had been represented to be, he applied to the vendor, within a reasonable time, to rescind the bargain, who refused to do so; *Held*, that this furnished a sufficient ground for the interference of a court of equity, to rescind the contract; even though there was no intention on the part of the vendor to deceive the purchaser.

Whatever may have been the motive of a vendor in making erroneous representations respecting land about to be sold by him, it is enough to entitle the purchaser to relief, that there was a misrepresentation of a matter of fact, material to the subject of negotiation, and which constituted the very basis of the contract.

It is a well settled doctrine, in equity, that a mutual mistake of facts, though such mistake may have been innocently made, is a sufficient ground to avoid a contract.

To avoid a contract on the ground of misrepresentation, there must not only have been a misrepresentation of a material fact constituting the basis of the sale, but

Taylor *v.* Fleet.

the purchaser must have made the contract upon the faith and credit of such representations. At least, he must so far have relied upon them as that he would not have made the purchase if such representations had not been made.

If a purchaser has acted upon his own judgment, and has not been influenced by the misrepresentations of the vendor, however untrue they may have been, he has no right to be released from his bargain.

Where a purchaser applies for a rescision of a contract, on account of the false representations of the vendor, it is not necessary he should prove the express representations stated in the bill of complaint. It is sufficient to prove words of equivalent import.

Where, between the time of making a contract of purchase and applying to rescind it, great changes have taken place in the character and value of the property, the lapse of time is an important consideration. But where no material change in the property has occurred, and it may be restored in as good a condition as when the purchaser received it, and he has offered to rescind the contract within a reasonable time, the lapse of time furnishes no well grounded objection to a bill for a rescision.

IN EQUITY. This was a bill filed by the purchaser, to rescind a contract for the sale and purchase of a farm. The vendor also filed a cross-bill for the foreclosure of a mortgage, executed by the purchaser, for a portion of the purchase money. The facts upon which the sale was sought to be set aside, are stated in the opinion of the court.

*William Curtis Noyes,* for the plaintiff.

*John A. Lott & C. D. Sackett,* for the defendants.

HARRIS, J. Upon a careful examination of the evidence in this cause, I think the following facts are established. (1.) That the object of Taylor in making the purchase in question was to obtain a farm adapted to the business of raising early vegetables for the New-York market, and that at the time of the sale, Fleet, the vendor, was apprised of such object. (2.) That the land in question is not, in fact, as well adapted to the purpose for which it was purchased by Taylor, as other land in its immediate vicinity; that the crops upon the lands spoken of by the witnesses as the shore lands, mature a week or ten days earlier than the crops upon this farm; and for this reason, the annual value of the use of this land is but about half that of

the shore lands. (3.) That Taylor was ignorant of the actual character and capabilities of the farm, and had no means of obtaining such knowledge, except by information to be derived from those who, from their own observation and experience, were able to give such information. (4.) That Fleet, with a knowlege that Taylor's object was to obtain an early farm, and that his farm was not as early as the shore lands lying in the same neighborhood, represented to Taylor, when inquired of by him in relation to the quality and capability of the land, that " *there was no earlier land any where about there ;*" and that Taylor made the purchase, relying upon the truth of this representation. (5.) That within a reasonable time, after he had ascertained by actual experiment, that the land was not what it had been represented to be, Taylor applied to Fleet to rescind the bargain. It only remains to ascertain what are the rights of the parties, upon the principles of equity applicable to such a state of facts. In the view I am disposed to take of this case, it is not necessary to decide whether the representations made by Fleet were fraudulently made, or not. It is quite possible that, knowing, himself, that the shore lands were in fact *earlier* than the farms situated as his was at a distance from the water, when he made the statement that " his farm was the best adapted for the purpose of raising early vegetables for the New-York market, and that there was no earlier land any where about," he intended only to speak of lands in the vicinity of his farm similarly situated. But he did not so qualify his representations. And whether he intended it or not, he used language which was calculated to mislead Taylor, and to induce him, ignorant as he was of the difference between the shore lands and those situated as Fleet's were, to believe that the farm for which he was negotiating would enable him successfully to compete with any other farms in that neighborhood in the business in which he proposed to engage. If this be so, it furnishes sufficient ground for the interference of a court of equity, even though there was no intention on the part of the vendor to deceive the purchaser. Whatever the motive of the vendor, it is enough that there was a misrepresentation of a

Taylor *v.* Fleet.

matter of fact, material to the subject of negotiation and which constituted the very basis of the contract. It is a well settled doctrine in equity, that a mutual mistake of facts, though such mistake may have been innocently made, is a sufficient ground to avoid a contract. If, then, the vendor in this case, intending only to speak of lands in the neighborhood of his own, and similarly situated, has, nevertheless, made representations which have had the effect to mislead the purchaser in respect to a matter not only material in itself, but constituting the essence of the contract, however innocent he may be of any fraudulent intent, it furnishes sufficient ground for avoiding the sale. In *Doggett* v. *Emerson,* (3 *Story's Rep.* 733,) Mr. Justice Story states the principles by which courts of equity are to be governed in such cases, in the following elegant and forcible terms : "It is equally promotive of sound morals, fair dealing, and public justice and policy, that every vendor should distinctly comprehend, not only that good faith should reign over all his conduct in relation to the sale, but that there should be the most scrupulous good faith, an exalted honesty, or, as it is often felicitously expressed, *uberrima fides,* in every representation made by him as an inducement to the sale. He should, literally, in his representation, tell the truth, the whole truth, and nothing but the truth. If his representation is false in any one substantial circumstance going to the inducement or essence of the bargain, and the vendee is thereby misled, the sale is voidable, and it is usually immaterial, whether the representation be wilfully and designedly false, or ignorantly or negligently untrue. The vendor acts at his peril, and is bound by every syllable he utters, or proclaims, or knowingly impresses upon the vendee, as a lure or decisive motive for the bargain." If I am right, then, in the conclusion of fact at which I have arrived, that the vendor in this case represented to the purchaser that the land in question was as early as any land on that end of Long Island, and that this representation was a principal inducement to the purchase, and that such representation was in fact untrue, it follows that the purchaser is entitled to have the contract rescinded. The representation being untrue and influ-

Taylor *v.* Fleet.

ential, vitiated the transaction, whether such representation was "wilfully and designedly false, or ignorantly or negligently untrue." (*See also opinion of Mr. Justice Woodbury, in Warner* v. *Daniels,* 9 *Law Reporter,* 160; 1 *Story's Eq. Jur.* § 193; *Hough* v. *Richardson,* 3 *Story's Rep.* 659.)

It was much insisted, on the argument, by the counsel for the vendor, that, conceding the representations made by the vendor to have been untrue, the purchaser did not rely upon those representations, but himself took the precaution to examine the land. It is undoubtedly true, that to avoid a contract on the ground of misrepresentation, there must not only be a misrepresentation of a material fact constituting the basis of the sale, but the purchaser must have made the contract upon the faith and credit of such representations. At least, he must so far have relied upon them as that he would not have made the purchase if such representations had not been made. If the purchaser has acted upon his own judgment and has not been influenced by the misrepresentations, however untrue they may have been, he has no right to be released from his bargain. But I cannot concur with the counsel for the vendor in his position that the purchaser examined the land with a view to test the accuracy of the representations made by Fleet. On the contrary, all the witnesses agree that no personal examination of the land would enable any person, not previously acquainted with its capabilities, to determine whether the statements made by Fleet were true or not. The only means of knowledge within his reach was information to be obtained from those whose experience enabled them to speak from actual observation, with respect to the material question which constituted the object for which the purchase was made. I cannot think the purchaser was bound to distrust the statements made to him by the vendor, so far as to extend his inquiries to other persons, to test the truth of what he had been told. The vendor ought not now to be allowed to say that the purchaser placed too much reliance upon what he had told him. He had a right to take him at his word, and to make the purchase upon the faith of the truth of the representations which the vendor

Taylor *v.* Fleet.

chose to make, relying upon his right to avoid the sale if such representations, in any material matter, should prove to be untrue. Nor can I agree with the counsel for the vendor, that the case, as proved, varies essentially from that made by the bill. The allegation in the bill is, that Fleet represented the land to be full as early, if not earlier, than any land on that end of Long Island, and as well adapted to the raising of all sorts of early vegetables, fruits and market produce, as any other land on that end of the island. The witness, Henry A. Ovington, swears that he represented the land as being the best adapted for the purpose of raising early vegetables for the New-York market ; and stated that there " was no earlier land any where about." William H. Ovington says, that Taylor expressed his wish to obtain the earliest land there was, for the purpose of market gardening, and that Fleet said this land was as early as any that could be obtained, or words to that effect. I cannot doubt that the fair construction of the language used by Fleet, as proved by these witnesses, sustains the allegation upon which the bill is founded, that Fleet represented the land to be as early, if not earlier, than any land on that end of the island. It is not necessary that the express words stated in the bill should be proved. Such strictness is not required, even in an action at law founded on a warranty. (*Chapman* v. *Murch*, 19 *John.* 290.) It is sufficient to prove words of equivalent import. And I think that has been done in this case.

The only other objection to the relief sought, which I deem it necessary to notice, is the lapse of time which had occurred before any measures were taken to avoid the contract. It is true, that where, between the time of making the contract and applying to rescind it, great changes have taken place in the character and value of the property, the lapse of time is an important consideration. But here no material change in the property occurred after the contract. There is nothing to prevent the purchaser from restoring it in as good condition as he received it. He offered to rescind the contract within a reasonable time after he had ascertained, by actual experiment, that the representations which had induced him to purchase were

Taylor *v.* Fleet.

not verified. No injustice to the vendor will result from the delay of the purchaser in filing his bill. Under such circumstances, the lapse of time furnishes no well grounded objection to the relief sought.

My opinion, therefore, is that the sale should be set aside, and that the parties should be restored to their original rights.

There must be a decree, directing the repayment of the purchase money received by Fleet, with interest, upon the execution of a re-conveyance by Taylor, sufficient to re-vest the title in Fleet. Taylor is also entitled to be paid for the increased value of the farm by reason of permanent improvements made since the purchase; and must be charged with the fair annual value of the use of the farm since the sale. There must be a reference to Samuel M. Woodruff, Esquire, or such other suitable person as may be agreed upon by the parties, to ascertain the amount due from Fleet upon these principles. Such amount is to be declared to be an equitable lien upon the premises, and if, within thirty days after the coming in and confirmation of the report, the amount due shall not be paid, application may be made at the foot of the decree, for a sale of the farm, to pay such amount with interest and costs. The bond and mortgage executed to secure the balance of the purchase money, and for the foreclosure of which the cross-bill is filed, must be cancelled. Taylor is also entitled to costs of the original and cross-suits.