## COURTNEY v. CARR.

1. BILLS OF EXCEPTIONS. Bills of exceptions should be signed at the term at which the cause in which they are taken is tried, unless postponed by consent of parties; but where several exceptions were taken during the progress of a trial, and a motion was made for a new trial, which motion on account of a press of business was continued to the following term, at which it was overruled and a bill containing all the exceptions taken by the appellant at the trial was signed, it was held that such consent will be presumed even though it does not appear upon the face of the record.

2. FALSE REPRESENTATIONS. To entitle a vendee to recover in an action

against the vendor for damages sustained by reason of false representations made by the vendor in the sale of real estate, it must not only appear that the representations were contrary to the facts and that the contract was procured thereby, but that the party making them knew them to be false.

*Appeal from Polk District Court.*

SATURDAY, DECEMBER 15.

FOR the facts see the opinion of the court.

*McHenrys* and *Kasson* for the appellant.

I. The bill of exceptions was filed in open court on the 29th day of March 1860. It may be filed after the trial by consent, "and where a bill of exceptions is subsequently filed, such consent shall be presumed unless the contrary is shown by the record." Code of 1851, section 1805; Bac. Abr. Title, Bills of Exceptions; *Beauchamp* v. *Mudd*, Hardin's Ky. R. 166.

II. The instructions given for plaintiff are contrary to law. In the case of *Holmes* v. *Clark*, 10 Iowa 423, it is made the settled law in this State, that to sustain "an action of damages for a false representation or fraud, three circumstances must combine: *first*, it must appear that the representation was contrary to the fact; *second*, that the party making it knew it to be contrary to the fact; and *third*, that it was the false representation which gave rise to the contracting of the other party." Apply these rules to the case at bar. The first instruction for plaintiff concludes thus: "But if the representation is made through *mistake, carelessness or ignorance*, the result is the same, *and is a fraud*."

The second instruction defines a "fraud" to be "every misrepresentation of a material fact" which the other party "did not have equal means of knowing or ascertaining its falsity;" or if the buyer actually reposed confidence in the vendor's statements, &c.

The third indicates the liability of the defendant for erroneous statements if he was not "careful to state it as an opinion, and not as a fact."

It will be observed that the entire theory of these instructions is in conflict with the law as settled in *Holmes* v. *Clark,* and is identical with the first instruction in Holmes' case, as quoted in the opinion of this court, and for which that case was reversed. Here is the same confusion between a case upon warranty, and one for fraud and deceit. The defendant's instructions asked and refused being the converse of these, it is not necessary to review them.

*Casady, Crocker & Polk* for the appellee.

I. The trial was had at the September Term of the District Court, 1859. Judgment was rendered at that term in favor of the plaintiff for $2,860. No exceptions were settled and signed at that term of court. During the next term in March, 1860, a bill of exceptions was settled and signed. This bill of exceptions we moved to have stricken from the record, it having been settled and signed in vacation without any agreement or consent on the part of plaintiff. Section 1805 of the Code provides, "That either party may except to any decision or opinion of the court. If for matters occurring during the trial the exceptions must be taken and reduced to writing before the verdict is rendered unless otherwise arranged by consent; and when a bill of exceptions is subsequently signed such consent shall be presumed unless the contrary is shown by the record." In *Claggett* v. *Gray,* 1 Iowa 20, the Supreme Court place a construction upon this statute. WRIGHT, C. J. in delivering the opinion says: "We can not believe that in the absence of an express agreement or consent, it was designed that the time for settling the exceptions was to be extended beyond the term. And in the absence of such express agreement the court can not after the adjournment sign the bill of exceptions."

II. We do not think that, upon inspection, the court will find the instructions obnoxious to the objections urged against them. Whatever may have been the doctrine formerly, in cases of fraud, in regard to the necessity of proving a guilty knowledge, we claim that the modern doctrine is as laid down in the case of *Monroe* v. *Pritchard*, 16 Alabama 785, which was an action on the case by the vendee of land against the vendor for false and fraudulent representations as to the boundaries and extent of the land sold, and it was held, " that although the plaintiff was bound to show that such misrepresentations were fraudulently made, yet it is not indispensable that the party making them should at the time have known them to be false. It is sufficient that he made them recklessly, not knowing them to be true, and for the purpose of influencing the other party making the purchase." Again, in Story on Sales, section 165, the doctrine is laid down as follows : " That any misrepresentation of a material fact made by one party with a design to deceive the other party to his injury is a fraud; nor does it matter whether the party making the misrepresentation knew it to be false or was utterly ignorant in respect to the fact that he stated, provided that it was material and the other party had a right to rely upon it, and was deceived; since the affirmation by a party, that a fact is true which he neither knows or believes to be true, is no better in morals nor in law than to tell an absolute lie." See also, 12 Metcalf 549. Again, " When false representations are made operating as material inducement to the contract, it is not necessary to give proof of a fraudulent intent by the party making such representations." Story on Sales, section 165; 12 Metcalf 549; 1 Barb. Reports 471.

It does not matter then, we contend, whether Carr had knowledge of the things regarding which he made representations. If he made them to the plaintiff with the intention of influencing him he was bound to know that they were true, because the plaintiff had a right to rely upon such rep-

resentations, and the proof is that he did rely upon them, which was known to defendant at the time of the trade.

WRIGHT, J.—A question preliminary to the consideration of the errors assigned, first demands our attention. During the trial testimony was offered by appellant which was rejected, to which defendant, in the language of the bill of exceptions, "at the time excepted." These instructions were asked by plaintiff and given, and defendant in like manner excepted. And so he did again when instructions asked by him were refused. The verdict being for plaintiff, defendant moved to set it aside and for a new trial; and this motion, "owing to a press of business," was continued to the next term. At the succeeding term this motion was overruled, and the bill of exceptions was then settled, reciting all the above facts, as well as the order overruling said motion. It is now moved to exclude this bill of excep- tions for the reason that it was not settled and signed at the term at which the trial took place and the exceptions were taken. Whether the appellee objected or consented to the signing of the bill, does not appear.

If this bill had been settled in vacation, we think, upon the authority of *Claggett* v. *Gray*, 1 Iowa 20, it should be excluded from the record. Where, however, the motion in arrest and for a new trial has been continued to the suc- ceeding term, we are of the opinion that it is sufficient to embody the several exceptions into one bill and have it signed by the judge, unless the dissent of the appellee is shown. The better and safer practice doubtless is to reduce the exceptions taken prior to the verdict to writing, before its rendition, and certainly during the term. And if the opposite party will not consent to the postponement beyond the term it must be done. If, however, the party excepting sees proper, at his own hazard, to thus delay and from a press of business, as in this case or otherwise, the disposi- tion of his motion for a new trial is continued to a succeed-

ing term, we think the bill may then be settled and signed embodying all the points relied on without its appearing affirmatively that it was thus arranged by consent. The presumption spoken of in section 1805, will obtain in such cases, as though the bill was signed at the trial term. This presumption may of course be rebutted.

II. Thus viewing the record we pass to the consideration of some of the errors assigned.

The action is for fraud in the wilful misrepresentation of defendant in the sale to plaintiff of certain lands. These misrepresentations are alleged to consist in statements made as to the quality of the land; the quality and quantity of the timber thereon; the character and capacity of a saw mill thereon erected; the number of saw logs on the land and sold therewith, as well as in some other respects not material to be now mentioned. All these averments are denied and the testimony seems to have been directed to the issue thus made. At the request of the plaintiff the court instructed the jury, "that when a party misrepresents a fact for the purpose of misleading and imposing upon the other party, to his injury, he is guilty of a positive fraud, and it does not matter by what means such misrepresentations were effected, whether by silence, by acts, or by words, or signs or artifices of any kind, it is a fraud if the party upon whom they are practiced is actually deceived thereby; *nor is it necessary that there should be a wilful intention to deceive; but if the misrepresentation is made through mistake, carelessness or ignorance, the result is the same and is a fraud.*" This instruction was objected to by defendant, and the giving of it is now assigned for error.

The case of *Holmes* v. *Clark*, 10 Iowa 423, must be regarded as decisive of the question here presented. The rule is there clearly stated, that before a defendant can be held liable in an action on the case for deceit, or before the plaintiff can recover for damages sustained in consequence of the wilful mis-statements of the vendor, it must appear not

only that the representations were contrary to the facts, and that the contract was procured thereby, but that the party making it *knew* it to be false. Following this rule, (and we entertain no doubt of its correctness,) we are brought to the conclusion that the instruction above quoted was erroneous. See Smith's Leading Cases, 220.

We do not stop to discuss the further proposition that defendant might be liable if he made the representations in a spirit of recklessness, or if he made them as of his own knowledge to be true, (and not as mere general assertions) when in fact they were untrue, for the reason that the instruction complained of goes still further and holds him liable if he made the representations through *either* mistake, ignorance or carelessness. This rule ignores too completely the necessity of proving the *scienter*, or that which, in some excepted cases, has been held to supply its place. Nor again need we enquire whether, (following *Williamson* v. *Alanson*, 2 East. 446,) plaintiff might not recover upon a proper petition in an action on the case for a breach of warranty without evidence that defendant *knew it to be false* at the time it was given, for the reason that this action is for the deceit, without reference to a warranty.

The case of *Collins* v. *Denison*, 12 Met. 549, referred to by appellee, turned not upon the point now under discusion, but whether in addition to the false representations and the knowledge thereof by defendant, as also evidence that plaintiff was thereby induced to make the purchase, the vendee must also prove that the vendor made the representations *with the intent* thereby of inducing the trade. We need only say that the distinction between that case and this is too manifest to need comment. Nor is the case of *Taylor* v. *Fleet*, 1 Barb. 471, more applicable. That was a *bill in equity to rescind the contract*, and was placed upon the ground that Taylor's object in purchasing the farm was to obtain one *adapted to a particular business*; that he was ignorant of the actual character and capabilities of that purchased;

that *Fleet, with a full knowledge of Taylor's object,* misrepresented that which was material to the subject of negotiation, indeed that which constituted the very basis of the contract. That, again, is a very different case from the one at bar.

The case of *Monroe* v. *Pritchard,* 16 Ala. 785, cited by appellee, is not before us, but from what is stated in argument we conclude that the fact that the representations were *recklessly* made, had much to do in its determination. That defendant would be liable for representations made through *either* mistake, ignorance or carelessness, is by no means deducible from the doctrine contained in Story on Sales, section 165.

This conclusion renders it unnecessary to examine the other errors assigned.

Judgment reversed.