LAIRD BROS. v. DICKERSON ET AL.

I. PER COLE, J. MILLER, CH. J., CONCURRING.

1. **Attachment**: VENUE. An action was commenced against a non-resident by attachment; no property of defendant was attached in the county where the suit was begun, but levy was made in another county to which, on motion of defendant, upon special appearance therefor, the venue was changed: *Held*, that the lien upon the property was valid from the date of the levy and took precedence of an attachment in another action brought in the county to which the venue was changed, the attachment therein being issued and levied after the first, and before the cause was transferred.

> 1. The District Court is a court of general jurisdiction, and, excepting statutory limitations upon the manner of its exercise, has jurisdiction over every cause brought within the district.

> 2. That no property of defendant in an attachment suit was found in the county did not, under the Code of 1851, defeat the jurisdiction of the court.

> 3. Change of venue to the county where property of defendant was situated made the proceedings of the same effect as if originally commenced in that county.

> 4. If the court in which the action was commenced had no jurisdiction, it could not have granted the change of venue.

## II. PER DAY, J.

2. ———: ATTACHING CREDITOR. An action was commenced against a non-resident by attachment; no property of defendant was attached in the county where the suit was begun, but levy was made in another county to which, on motion of defendant, upon special appearance therefor, the venue was changed: *Held*, that the lien upon the property was valid from the date of the levy and took precedence of an attachment in another action brought in the county to which the venue was changed, the attachment therein being issued and levied after the first, and before the cause was transferred.

> 1. An attaching creditor acquires through his attachment no higher nor better rights to the property attached, than the defendant had when the attachment took place.

## III. PER BECK, J., DISSENTING.

3. ———: APPEARANCE: JURISDICTION. The Code of 1851 did not authorize that attachment suits should be prosecuted in counties other than those in which the attached property lay; and an action, having been

instituted in the wrong county because the *situs* was in another, could not be prosecuted to judgment for want of jurisdiction. Following *Courtney v. Carr*, 6 Iowa, 238.

### *Appeal from Polk District Court.*

### FRIDAY, JUNE 18.

THIS is a suit in equity to quiet the title to lots eight and nine, in block eighteen, in the town of East Des Moines, Polk county, Iowa, in the plaintiffs, who composed the firm of Laird Bros. The defendants are the administrator and heirs of Henry Courtney, now deceased. The District Court quieted the title in the plaintiffs. The defendants appeal.

*Polk, Hubbell & Goode*, for appellants.

*Nourse, Kauffman & Holmes*, for appellees.

COLE, J.—There is no conflict in the evidence, and it shows the following facts as to plaintiff's title: December 1, 1857, David Buzzard filed his verified petition in the Polk District Court against Horace Carr, upon a promissory note for one hundred dollars, and upon the ground that the defendant was a non-resident, asked and obtained a writ of attachment, which was issued, and on the same day was levied upon the lots in controversy. At the appearance term the cause was continued for service by publication, the original notice having been returned by the sheriff "not found." An order was made by the clerk directing that the notice be published in the Iowa State Journal; and at the March Term, 1859, (March 12,) proof of publication in said paper, and that a copy of the petition had been mailed to the defendant, was filed, and thereupon a general judgment by default for one hundred and twenty-five dollars and costs was rendered. July 8, 1859, a general execution was issued thereon, and on the same day was levied upon said lots eight and nine, they were duly advertised for sale and on August 13, 1859, were sold together, to Laird Bros., for $1,600, and on December 19, 1860, a sheriff's

deed was duly executed therefor, and was recorded two days thereafter.

On January 1, 1859, Laird Bros. filed their verified petition in the Polk District Court against Horace Carr, claiming fifteen hundred dollars for money paid as his surety, and alleged his non-residence and thereon asked a writ of attachment, which was issued and levied on the same day upon the lots in controversy; the original notice was returned on the same day, "not found." No service of notice by publication or otherwise appears of record; but on March 8, 1859, a general judgment upon default was rendered against said defendant, Carr, for $1,472.38; and on July 20th, 1859, a general execution was issued thereon, and placed in the sheriff's hands; and his return shows that he credited $1,431.37 on said execution, it being the surplus of the $1,600, bid for the lots, after paying the amount of the Buzzard execution and costs. Upon the subject of the service of notice upon Carr, one of the plaintiffs testifies, "my impression is J. W. Laird wrote him on the subject, and got an answer from him acknowledging service in the case, which appeared to be satisfactory to the attorneys;" while one of their attorneys testifies "that according to my best recollection there was a publication, but of that fact I would not be positive." These facts constitute the basis of the plaintiff's title.

The following are the facts as to the defendant's title. On April 2, 1857, Henry Courtney filed his verified petition in the District Court of Boone county against Horace Carr, claiming eight thousand dollars damages connected with the sale of certain real estate; the non-residence of said Carr was averred and a writ of attachment was asked, and was duly issued; one writ was issued to Polk county, and this was duly executed on April 22, 1857, by attaching the lots in controversy; another writ was issued to Boone county, and this was executed there, August 14, 1857, by attaching certain land, upon which said Carr held a mortgage executed to him by said Henry Courtney. At the appearance term, and on October 6, 1857, and without any service of notice upon him, the defendant, Carr, entered his special appearance and moved the

court for a change of venue of the cause to the District Court of Polk county, because the cause of action was transitory and not local, and the defendant was a non-resident, and no personal service of notice had been made, but an attachment had been levied on the defendant's property in Polk county, and none had been levied upon property belonging to him in Boone county. Upon the hearing of this motion it was overruled, and the defendant appealed to the Supreme Court, where the judgment was reversed, and the cause remanded with directions to sustain the motion, and order a change of venue to Polk county. (See *Courtney v. Carr*, 6 Iowa, 238.) October 6, 1858, the District Court of Boone county, pursuant to said mandate, granted the change of venue, and on November 23, 1858, the papers were duly filed in the District Court of Polk county. March 8, 1859, the defendant, Carr, filed his answer to the plaintiff's petition, and on September 6, 1859, the plaintiff filed his reply thereto, and on September 8, following, the cause was tried to a jury, and resulted in a verdict and judgment for the plaintiff, Courtney, for $2,860, and costs. The defendant appealed to the Supreme Court, where the judgment was reversed, and the cause remanded for a new trial. (See *Courtney v. Carr*, 11 Iowa, 295.) Before a second trial, the plaintiff, Courtney, died and his administrator was substituted. A motion was then made to quash the attachment, but it was not sustained. On February 19, 1864, the cause was again tried to a jury and resulted in a verdict and general judgment for plaintiff for $5,200 and costs. Afterwards, and on March 4, 1868, by a *nunc pro tunc* order this judgment was made special, and ordered the sale of the lots attached. July 2, 1864, a general execution was issued upon said judgment, and levied upon the lots in controversy, and on August 11, 1864, lot eight was sold to the administrator for $1,200, and lot nine was sold to J. S. Polk, for $450, and afterwards Polk conveyed to the defendants. These facts constitute the basis of the defendant's title.

From these facts, it is manifest that the superiority of the plaintiff's title over the defendants depends upon the invalidity of the writ of attachment issued by the Boone District

Court to Polk county, and levied upon the lots in controversy.

**1. ATTACH-MENT: venue.** That attachment and the levy under it was first in order of time, and, if it was legal and valid, the defendant's title which is derived thereunder must be better, and paramount to the plaintiff's title. If that writ and levy were invalid, then the defendant's title would be first and best. We turn, therefore, to the investigation of the question of the validity of that writ and levy.

The statute in force at the time the action by Courtney against Carr was instituted, enacted that " except where otherwise provided, personal actions must be brought in a county wherein some of the defendants actually reside. But if none of them have any residence within this state, they may be sued in any county wherein either of them may be found." Code of 1851, Sec. 1701. And it was also enacted that " in cases of attachment of property when the defendant is not served, or in cases where the suit is brought to obtain possession of personal property, or to enforce a lien or mortgage, or where it relates to real property, it may be brought in any county where the real property or any portion of it lies, or where any part of the personal property may be found." Sec. 1703. And it is also enacted that, " if a suit be brought in a wrong county, it may be there prosecuted to a termination, unless the defendant demand a change of venue to the proper county. In cases of such change of venue, the court shall order the same at the costs of the plaintiff, and may award the defendant a reasonable compensation for his trouble and expenses in attending at the wrong county." Sec. 1702. It may be well, in this connection, to set forth also the constitutional provisions respecting the District Courts and their jurisdiction, so far as they bear upon the question under consideration, to-wit:

" The judicial power shall be vested in a Supreme Court, District Courts, and such other courts, inferior to the Supreme Court, as the general assembly may from time to time establish." Art. 5, Sec. 1. " The District Court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters aris-

ing in their respective districts, in such manner as shall be prescribed by law." Art. 5, Sec. 6.

From these constitutional and legislative provisions it is plain to be seen that the District Courts are courts of general jurisdiction, and, except so far as the manner of its exercise is prescribed by the statute, it has jurisdiction over every cause brought within its district. This idea of the general and unlimited jurisdiction of the District Court is further illustrated by the fact that they are styled the District Court for the State, held in and for a particular county, and the judges of the District Courts are judges for the state, with authority to grant writs running into any part of the state and to hold District Courts in districts other than those in which they were elected. It is therefore clear, beyond question, that the District Courts have general jurisdiction of all matters brought before them. But the manner of the exercise of this general and inherent jurisdiction is prescribed by law. The legislature may not deprive the District Court of its jurisdiction, nor, in the least, limit it; all that it is authorized to do is to prescribe the manner of its exercise. This the legislature has done by the enactments above quoted, whereby it is provided that in cases of attachment of property when the defendant is not served (and this was the case in *Courtney v. Carr*, above stated), the action should be brought in the county where the property attached, or some portion of it, was situated. This, without more, would not deprive the District Court of its general jurisdiction over the subject matter, which the constitution has conferred, so as to render its proceedings or judgment void, that is a nullity; although it might very clearly give the right to the defendant to appear and have the action dismissed, because it was not brought in the manner provided by statute. But, however this may be, the statute itself expressly provides that if the suit be brought in the wrong county, the court shall still have jurisdiction, and the cause may be there prosecuted to a termination unless the defendant demand a change of venue to the proper county. The jurisdiction of the court, then, is not questioned or limited either by the constitution or the statute; and if the court should erroneously or illegally

overrule a motion to change the venue to the proper county, and should retain the cause and proceed to judgment, such judgment could not be treated as a nullity or void. But, if the theory of the plaintiff herein is correct, then such judgment would be a nullity and void, because the court rendering it had no jurisdiction.

It follows, therefore, that *the jurisdiction* of the District Court of Boone county over the cause of action existed, because of its general jurisdiction over the subject matter of it, and because the action was brought there; and the fact that no property of the defendant subject to attachment was found in the county, did not defeat its jurisdiction or render its proceedings void, but it gave to the defendant the right (of which he availed himself) to appear and have the cause transferred to the proper county. All of the proceedings were of the same force and validity as if the action had been brought in the proper county, or as if the property of the defendant had been found and attached in that county. The action was erroneously brought in Boone county, and the defendant had this error corrected. Such error did not defeat the jurisdiction of the court.

It is, however, claimed by the appellees' counsel, that it was decided by this court, in *Courtney v. Carr*, 6 Iowa, 238, that the District Court of Boone county did not have jurisdiction of the case, in which the writ of attachment was issued whereon the defendant's title in this case rests. A careful reading of the opinion in that case will clearly show the error of such claim, and it will be abundantly manifest by a brief analysis of that case. That action was brought in Boone county; the defendant was a non-resident and not served with notice; two writs of attachment were issued, one to Boone county and the other to Polk county; the latter was served and levied upon the lots in controversy, and the former was levied upon certain lands of which the defendant, Carr, was mortgagee. The defendant, though not served, appeared specially, and moved to change the venue of the cause to Polk county, because property had been attached there, and none had been attached in Boone county. This motion was overruled by the District

Court, and the defendant appealed to the Supreme Court. The only question before the Supreme Court was, the right of the defendant to have the venue changed to Polk county. To determine this question involved the inquiry whether any property of the defendant had been attached in Boone county; and this, in turn, depended upon the result of two other queries. First, whether after a sheriff had made an indorsement of no property found, on a writ of attachment, and before its return to the clerk, it was competent for a second sheriff to levy it upon property of the defendant, if he could find any? This was answered in the affirmative. And, second, whether the interest of a mortgagee in the real estate mortgaged, was liable to seizure or levy by attachment? This was answered in the negative. It was, therefore, held that since there was no property of the defendant, Carr, attached in Boone county, except his interest as mortgagee in certain lands, which were not liable to attachment, there was, therefore, no property attached there, and hence the District Court erred in refusing the change of venue to Polk county; and the judgment was reversed and the cause remanded with directions to grant the change of venue to Polk county, where property had been attached. It was accordingly done. No question as to the jurisdiction of the court to issue the writ, or to retain and adjudicate the cause in the absence of a motion to change the venue, was made to or decided by the court. The single ultimate question made and decided was, whether the defendant, having appeared and moved for a change of venue, was entitled to it. And the Supreme Court decided, that since property had been attached in Polk county, and none, liable thereto, had been attached in Boone county, the defendant had the right to have the venue changed to Polk county. The question was solely one of venue, and not one of jurisdiction.

Another view which shows that the Supreme Court regarded the writ of attachment as valid and effective is, that the order for the change of venue from Boone county to Polk, was because property had been attached, under that writ of attachment, in Polk county. But if the writ of attachment was invalid or void because of the want of jurisdiction of the cause

by the Boone District Court, then there was no property attached in Polk county, because a void writ is no writ; and a writ issued by a court having no jurisdiction is void. If the Boone District Court, then, had no jurisdiction the writ was void; but if it was void it could not be effective for any purpose, not even for the purpose of basing thereon an order for a change of venue. If it was valid and effective for that purpose, it was valid and effective for all purposes. And the Supreme Court expressly adjudged that it was valid, for that property had been attached by virtue of it. In the language of the opinion in that case, " it is quite manifest that property of the defendant was attached by the sheriff of Polk county, and it is equally clear that by virtue of that attachment the District Court of that county would have had jurisdiction to hear and determine the cause." This renders the question as to the validity of the writ and the legality of its levy, *res adjudicata.*

Having thus found that the writ of attachment issued from the District Court of Boone county was legal and valid, it follows that the defendants have the paramount title, since that writ was first issued and first levied upon the property in controversy. The defendants are entitled, under their cross petition, to have their title to the property quieted and confirmed in them.

REVERSED.

MILLER, CH. J., *concurs* in this opinion, and DAY, J., *concurs* in the conclusion reached, and states his views and reasons in a separate opinion.

BECK, J., *dissents*, for reasons stated by him in his dissenting opinion.

DAY, J.—Without determining that Section 1702, of the Code of 1851, applies to an action of attachment brought in one county, where property is attached in another, and no personal service is had, and authorizes it to be there prosecuted to judgment, unless the defendant appears and moves a change of venue, I, upon other grounds, reach the conclusion that the

title of the defendants is paramount and that the judgment should be reversed.

The attachment in question, at the suit of Henry Court-ney, was levied on the 22nd day of April, 1857. The attachment at the suit of David Buzzard was levied on the 1st day of December, 1857.

It cannot be doubted that any act done by Horace Carr, the owner of the property levied upon, intermediate the levy of the first and second attachments, affecting his interest in or his status in relation to the property, would in like manner affect the interest acquired by Buzzard, the subsequent attaching creditor. An attaching creditor acquires through his attachment no higher or better rights to the property attached,

2. ——: attaching creditor. than the defendant had when the attachment took place. *Thomas v. Hillhouse*, 17 Iowa, 67, (71). Suppose that, on the 7th day of October, 1857, Henry Carr had executed a mortgage upon the property, or had confessed a judgment, the subsequent attachment of Buzzard would have been subject to the liens thus created. Instead of doing this, however, Carr, on the 7th of October, 1857, appeared in the District Court of Boone Co., and moved to change the venue in the cause to Polk county upon the ground that an attachment had there been levied upon the property in controversy. It must be conceded that the property in controversy was within the local jurisdiction of the District Court of. Polk Co.. Carr appeared in person and asked that the jurisdiction of that court might attach, not to himself personally, not because he resided in Polk county and should have been sued there, but to the property in question, because it was situated in Polk county, and had been attached there. And it was ultimately determined that he was entitled to what he asked.

Now, at the moment that Carr appeared in the Boone District Court, and recognized the validity of the attachment in Polk county, and demanded a change of venue, he voluntarily affected the status of the property and his own relation to it, just as much as if he had executed a mortgage upon it, or confessed a judgment which became a lien upon it. Suppose after he had procured the order for a change of venue, he had

made no further appearance in the case, and the cause had been docketed in Polk county, and judgment rendered, and this property sold. Would he have been allowed to complain of the invalidity of the proceedings, and to set the judgment and sale aside for want of jurisdiction? It seems to me that he would be estopped to deny the jurisdiction of the Polk County court, and the validity of the attachment. After the plaintiff had taken him at his word, after the court had decided he was correct in his claim that property had been attached in Polk county and the proper venue was there, after the plaintiff, at his suggestion, and relying upon the judicial determination which he had secured, had transferred the cause to Polk county, and, after the attendant expense and loss of time, had procured a judgment, it seems to me Carr would not be permitted to say that the Polk county court had no jurisdiction because there was no proper attachment of property there.

And if Carr could not be heard to interpose such a claim, those purchasing under the Buzzard judgment cannot interpose it for they succeeded to just such rights as Carr had at the time they levied their attachment.

Upon these grounds, and without further elaboration of the reasons assigned, I am of opinion that those claiming under the Courtney judgment have the paramount title, and that the judgment should be reversed.

BECK, J., *dissenting.* The sections of the Code of 1851 prescribing the place of bringing suit are not cited in the foregoing opinion in their proper order. Section 1702 is presented as though it were applicable to the cases contemplated in section 1703, when in truth, both from the order of the provisions as they are presented in the law, and the nature of the cases contemplated in the preceding and succeeding sections, it is very plain that the section first named, 1702, does not apply to actions referred to in section 1703. Where an action in which personal service was had—a personal action— was brought in the wrong county, it could there be prosecuted

*3. ——: appearance: jurisdiction.*

to a judgment unless the defendant demand a change of venue to the proper county.   Section 1703 contemplated actions by attachment where the defendants were not served, suits to recover personal property, or to enforce a lien or mortgage, etc.   These actions were to be brought in the county where the property was found.   The *situs* of the property determined the proper places of bringing suit.   In these actions jurisdiction acquired of the person of defendant by service of process subsequently to the commencement of the suit does not, if the property was not in the county, require us to hold that the action could have been prosecuted to judgment.   If this were so, the provision would have been defeated.   The provision is clearly to the effect that all the actions contemplated were to be brought and prosecuted in the county where the property affected thereby was found.   Attachment cases, where there was no service upon defendant, were to be regarded just as other cases contemplated in the section.   Now, to hold that section 1702 applied to this provision would result in the conclusion that unless the defendants appeared in cases to which it was applicable, and asked for a change of venue, they may have been prosecuted to final judgments.   No one can assent to this.   We ask, then why could not these causes, when brought in the wrong county, have been prosecuted to final judgment? The answer is that the law forbade it—deprived the court of the authority to determine such cases.   In other words, the law denied jurisdiction in such cases to the court.   In the absence of appearance or assent of a defendant in a case of this class brought in the wrong county, a judgment would have been void for want of jurisdiction.   What was to be done when the defendant appeared specially and asked a change of venue to the proper county?   This question was answered in *Courtney v. Carr*, 6 Iowa, 238.   The court held that the action, having been brought in the wrong county, could not be prosecuted to judgment because of want of jurisdiction, resulting from the fact that the property affected was not found in the county where the action was commenced, and that the venue should be changed to the county where the property was found.   As, without defendant's assent, the suit could

not have been prosecuted to judgment in the court where it was commenced, the court held that jurisdiction was wanting in the District Court, and ruled that the venue ought to be changed.

. If the District Court had no jurisdiction in the case, all its proceedings were void. The attachment issued upon which the lots in dispute were seized, was one of these proceedings and must fail. I see no escape from this conclusion.

Upon the transfer of the case to the Polk District Court, it acquired jurisdiction, but this did not cure the invalidity of the attachment, for the writ was not a part of its proceedings. A writ void when issued for want of jurisdiction will not be rendered valid by the subsequent acquisition of jurisdiction in the proceedings, certainly not as to rights and acts accrued and done before such acquisition of jurisdiction. Now, if the writ of attachment could have been made valid by the transfer of the case to Polk county and the acquisition of jurisdiction of the court of that county, and is to be regarded as a writ of that court, a proposition I by no means admit, this was long after the attachment issued in the case, under which plaintiffs claim title. Their lien, in this view, if otherwise valid, would be the older.

II. Carr's special appearance in the Boone District Court authorized that court to transfer this cause to Polk county. This was so held in the cause when in this court. 6 Iowa, 238. His appearance in the court of the last named county, conferred jurisdiction thereon. But the jurisdiction thus acquired could not act retrospectively, so as to affect the rights of third persons acquired before it attached. For this reason a motion of defendant to dissolve the attachment, which, as against him might preclude denial of the validity of the writ, could not affect the interest of plaintiff under the levy of the attachment in another case made before such case was brought to Polk county. The act of defendant in the action, while binding him, could not prejudice the rights of third persons.

Upon the grounds I have briefly stated, I dissent from the foregoing opinions announcing the conclusion of a majority of the court.