# IN THE SUPREME COURT OF IOWA

No. 19–2082

Submitted October 14, 2020—Filed May 7, 2021

**STATE OF IOWA,**

    Appellee,

vs.

**TYJAUN LEVELL TUCKER,**

    Appellant.

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

A defendant challenges his guilty plea to theft in the second degree. **APPEAL DISMISSED.**

McDonald, J., delivered the opinion of the court, in which Waterman, Mansfield, and Oxley, JJ., joined, and in which Christensen, C.J., and McDermott, J., joined as to divisions I–III, V, and VI. McDermott, J., filed a special concurrence, in which Christensen, C.J., joined. Appel, J., filed a special concurrence.

Andy Dunn (argued) of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller (argued), Assistant Attorney General, John P. Sarcone, County Attorney, and Amanda L. Johnson, Assistant County Attorney, for appellee.

**McDONALD, Justice.**

Tyjaun Tucker pleaded guilty to theft in the second degree, in violation of Iowa Code sections 714.1 and 714.2(2) (2019). In this direct appeal, Tucker contends his plea was not knowingly and voluntarily made and his counsel was ineffective for nonetheless allowing Tucker to plead guilty. In addition to those issues, Tucker challenges the constitutionality of new legislation that limits the ability of a defendant to appeal as a matter of right from a conviction following a guilty plea and that directs all claims of ineffective assistance of counsel be presented and resolved in the first instance in postconviction relief proceedings rather than on direct appeal. *See* 2019 Iowa Acts ch. 140, §§ 28, 31 (codified at Iowa Code §§ 814.6(1)(*a*), .7 (2020)). Tucker contends the new legislation violates his right to equal protection of the laws and the separation-of-powers doctrine.

## I.

The minutes of testimony show Tucker was employed as a technician of a cable communications company. In that capacity, Tucker entered the residences of the company's customers to replace modems or receivers. On one occasion, Tucker stole $2750 in cash from a customer. The customer reported the theft to the police, and the police contacted Tucker to obtain his side of the story. Tucker denied taking the money. He was eventually arrested and charged with theft in the second degree.

The parties reached a plea agreement. Tucker agreed to plead guilty to theft in the second degree, as charged, with the sentence to be served consecutive to a sentence in another matter. The parties agreed the sentences would be suspended due to Tucker's willingness to take accountability for his criminal conduct and agreed Tucker would be placed on probation for three years. Tucker's counsel confirmed the substance of the plea agreement on the record.

The district court's plea colloquy was thorough. The district court informed the defendant of his trial rights and obtained Tucker's waiver of the same. The district court informed Tucker he had no right to appeal absent a showing of good cause:

> THE COURT: Mr. Tucker, by pleading guilty today, your appellate rights after today will be that you can ask the Court for permission to file an appeal. You have to establish that good cause exists before the Court could grant you that right. So knowing what your appellate rights would be after today, do you still wish to plead guilty?
>
> THE DEFENDANT: I do.
>
> THE COURT: I didn't hear you.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And are you pleading guilty today voluntarily and of your own free will?
>
> THE DEFENDANT: Yes.

The district court accepted the defendant's guilty plea.

The defendant wished to proceed to immediate sentencing. The district court informed Tucker he had the right to delay sentencing, and Tucker stated he understood the right and waived the same. The district court informed Tucker he had the right to have a presentence investigation report prepared prior to sentencing, and Tucker stated he understood the right and waived the same. The district court also advised Tucker he had the right to file a motion in arrest of judgment and if Tucker proceeded to immediate sentencing, he would waive that right and "never be able to challenge [his] plea." Tucker stated he understood the right and intended to waive the same. The district court imposed the bargained-for sentence. Judgment was entered on November 20, 2019.

## II.

In 2019, the general assembly passed and the governor signed an omnibus crime bill effective July 1, 2019. *See* 2019 Iowa Acts ch. 140. The new legislation applies to this appeal because judgment and sentence was entered after the effective date of the bill. *See State v. Draine*, 936 N.W.2d 205, 206 (Iowa 2019); *State v. Macke*, 933 N.W.2d 226, 231 (Iowa 2019). There are two provisions of that legislation at issue in this appeal.

First, the new legislation limits a defendant's ability to appeal as a matter of right from a conviction following a guilty plea. Iowa Code section 814.6(1)(*a*) now provides:

> 1. Right of appeal is granted the defendant from:
>
> *a.* A final judgment of sentence, except in the following cases:
>
> (1) A simple misdemeanor conviction.
>
> (2) An ordinance violation.
>
> (3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.

Prior to the change in law, all defendants had an appeal as a matter of right (except in cases of simple misdemeanor and ordinance violations) without regard to whether the conviction was obtained after a trial or pursuant to a guilty plea. *See* Iowa Code § 814.6(1)(*a*) (2018).

Second, the new legislation requires all claims of ineffective assistance of counsel be decided in the first instance in postconviction relief proceedings rather than on direct appeal. The new statute provides:

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief

purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

Iowa Code § 814.7 (2019). Prior to the change in law, a defendant could raise a claim of ineffective assistance of counsel on direct appeal and this court had the authority to either decide the claim or preserve it for further development in postconviction relief proceedings. *See* Iowa Code § 814.7(2), (3) (2018).

III.

Tucker contends the new law violates his federal and state constitutional rights to equal protection of the laws. Specifically, Tucker contends section 814.6(1)(*a*)(3) makes an unconstitutional distinction between those convicted after trial and those convicted after a guilty plea. Our review is de novo. *See State v. Mitchell*, 757 N.W.2d 431, 434 (Iowa 2008) (applying de novo review to equal protection claims).

The United States and Iowa Constitutions guarantee the equal protection of the law to all persons. The Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Iowa Constitution provides, "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6. We have interpreted this provision of the Iowa Constitution to mean "similarly situated persons [should] be treated alike under the law." *In re Det. of Williams*, 628 N.W.2d 447, 452 (Iowa 2001) (en banc). Generally, "[w]e apply the same analysis in considering the state equal protection claim as we do in considering the federal equal protection claim." *In re Morrow*, 616 N.W.2d 544, 547 (Iowa 2000) (en banc) (quoting

*State v. Ceaser,* 585 N.W.2d 192, 196 (Iowa 1998), *overruled on other grounds by State v. Bruegger,* 773 N.W.2d 862 (Iowa 2009)). At its core, the federal and state "equal protection guarantee requires that laws treat all those who are similarly situated with respect to the purposes of the law alike." *Varnum v. Brien,* 763 N.W.2d 862, 883 (Iowa 2009) (emphasis omitted).

The first step in our equal protection analysis is to determine whether the challenged law makes a distinction between similarly situated individuals with respect to the purposes of the law. *See id.* at 882. This is a threshold test. *See id.* If the defendant "cannot show as a preliminary matter that [he is] similarly situated, [we] do not further consider whether . . . different treatment under a statute is permitted." *Id.*

Tucker has failed to establish he is similarly situated to a relevant comparator with respect to the purposes of the law. He argues section 814.6(1)(*a*)(3) makes an arbitrary distinction between the appellate rights afforded those convicted after trial and those convicted pursuant to a guilty plea. However, those convicted after trial and those convicted pursuant to a guilty plea are not similarly situated for the purposes of appellate review. *See Reed v. Hannigan,* 295 F.3d 1061, 1064 (10th Cir. 2002) ("Moreover, the fact that a petitioner who has pled guilty is treated differently than a petitioner who was tried and convicted by a jury does not violate equal protection because the petitioners are not similarly situated."). A guilty plea waives all defenses and challenges not intrinsic to the voluntariness of the plea. *See State v. Antenucci,* 608 N.W.2d 19, 19 (Iowa 2000) (en banc). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 1711–12 (1969). A guilty

plea puts a lid on the box and presumably concludes a case. *See State v. Mann*, 602 N.W.2d 785, 789 (Iowa 1999) ("Once a defendant has waived his right to a trial by pleading guilty, the State is entitled to expect finality in the conviction."). "[P]ersons who plead guilty have either acknowledged their guilt or agreed to waive their constitutional rights, so the need for an appeal is not present in the same way as it is after a trial." *Stellner v. Romanowski*, No. 1:07-cv-503, 2008 WL 2949225, at *6 (W.D. Mich. July 29, 2008).

Those who plead guilty voluntarily place themselves in a different class for the purposes of the equal protection guarantees than those who choose to defend and go to trial. *See Shaw v. Martin*, 733 F.2d 304, 317 (4th Cir. 1984) ("As to Shaw's equal protection argument, he cites no authority that finds an equal protection violation in a state scheme such as this, which allows jury sentencing after jury trials and requires judicial sentencing after a defendant pleads guilty."); *People v. Smith*, 548 P.2d 603, 605 (Colo. 1976) (en banc) (rejecting challenge to rule that treated those convicted following a guilty plea differently, stating "[t]he defendant in this case has not been treated differently than any other defendant that falls within the rule," and holding the defendant "was not denied equal protection or due process of law"); *Robinson v. State*, 373 So. 2d 898, 901–02 (Fla. 1979) (rejecting defendant's equal protection challenge to statute that prohibited direct appeal from guilty plea and that required initial review of guilty plea be in postconviction relief proceeding); *Smith v. State*, 659 S.E.2d 380, 381 (Ga. 2008) ("Smith has failed to show that [convicted defendants and defendants who plead guilty] are similarly situated. Indeed, they are not; while a defendant who pleads guilty admits committing a crime, a convicted defendant has not done so.").

The Court of Appeals of Oregon rejected a similar challenge in *State v. Freudenthaler*, 734 P.2d 894 (Or. Ct. App. 1987). In that case, the defendant challenged a statute that limited a defendant's right to appeal from a conviction following a guilty plea. *See id.* at 895. The defendant argued the statute impermissibly distinguished between defendants convicted after trial and defendants convicted after a guilty plea. *See id.* The court rejected the challenge, concluding the defendant was not similarly situated to those who went to trial:

> Here, by contrast, defendant could freely choose whether to put himself within the class for which he now claims unequal and more favorable treatment. He had the choice to bring himself within the "favored class" created by the statute by pleading not guilty. Having chosen to plead guilty, he has all the privileges which are available to all others who have chosen to put themselves within that class. [The statute] does not create impermissible distinctions.

*Id.* at 896. We agree with this analysis.

Because Tucker failed to make a threshold showing he is similarly situated to those convicted following trial, we need not determine whether there is a fundamental right to direct appeal following a guilty plea or whether there is a constitutionally valid justification for the distinction drawn in the statute. *See State v. Dudley*, 766 N.W.2d 606, 616 (Iowa 2009) ("If a plaintiff cannot show preliminarily that persons in the two classes are similarly situated, we have concluded the court need not determine whether there is a constitutionally adequate basis for the persons' different treatment."). Requiring those who plead guilty to establish good cause to pursue a direct appeal as a matter of right does not violate federal or state guarantees of equal protection of the laws. *See Morrow*, 616 N.W.2d at 548 ("If people are not similarly situated, their dissimilar treatment does not violate equal protection."); *see also People v. Ivester*, 286 Cal. Rptr. 540, 542–43 (Ct. App. 1991) (rejecting equal

protection challenge to statute denying appeal from a judgment of conviction upon a plea of guilty unless the defendant filed a written statement of reasonable grounds that challenge the legality of the plea).

## IV.

Tucker raises a separation-of-powers challenge to sections 814.6(1)(*a*)(3) and 814.7. Tucker argues sections 814.6(1)(*a*)(3) and 814.7 unlawfully strip this court of jurisdiction over convictions entered upon a plea of guilty and over claims of ineffective assistance of counsel.

On questions involving the separation of powers "this court shall make its own evaluation, based on the totality of circumstances, to determine whether [a] power has been exercised appropriately." *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 872 (Iowa 1978) (en banc). "Because statutes are cloaked with a strong presumption of constitutionality, a party challenging a statute carries a heavy burden of rebutting this presumption." *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 260 (Iowa 2002). "[T]he party must show beyond a reasonable doubt that a statute violates the constitution." *Id.*

## A.

"The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system." *State v. Barker*, 116 Iowa 96, 108, 89 N.W. 204, 208 (1902). The "historic concept of separation of powers to safeguard against tyranny" is memorialized in the Iowa Constitution. *Webster Cnty. Bd. of Supervisors*, 268 N.W.2d at 873. The constitution provides:

> The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these

departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, Three Separate Departments, § 1.

As we recently explained in *State v. Thompson*, the separation-of-powers doctrine has three general aspects. 954 N.W.2d 402, 410 (Iowa 2021). The separation-of-powers doctrine prohibits one department of the government from exercising powers that are clearly forbidden to it, prohibits one department of the government from exercising powers granted by the constitution to another department of the government, and prohibits one department of the government from impairing another in the performance of its constitutional duties. *See id.* The demarcation between a legitimate exercise of power and an unconstitutional exercise of power is context specific. "The separation-of-powers doctrine . . . has no rigid boundaries." *Klouda*, 642 N.W.2d at 260.

In resolving this context-specific question, we look first to the constitution to determine whether there is a textual allocation of power to a particular department of the government. *See Thompson*, 954 N.W.2d at 410. We look at the "text of the document through the prism of our precedent, tradition, and custom." *Id.* (quoting *State v. Brown*, 930 N.W.2d 840, 861 (Iowa 2019) (McDonald, J., concurring specially)). Historical practice is of particular importance in resolving separation-of-powers questions. *See id.* "The Constitution is a framework for government. Therefore the way the framework has consistently operated fairly establishes that it has operated according to its true nature." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610, 72 S. Ct. 863, 897 (1952) (Frankfurter, J., concurring). Thus, a history of deliberate practice among the different departments of the government can evidence a constitutional settlement among them regarding the constitutional division of powers.

## B.

We first address Tucker's challenge to section 814.6(1)(*a*)(3). Tucker contends the statute is unconstitutional because it deprives this court of appellate jurisdiction. He further argues the new law expresses the legislature's view "that a guilty plea cannot be worthy of an appeal" and thus "dictates to [Iowa's appellate] courts how it should treat guilty pleas." He argues the "legislature's judgment on this issue is wrong."

To resolve the question, it is first necessary to understand what the new law does. Under the new law, those convicted of any offense (other than a simple misdemeanor or ordinance violation) after trial may file a direct appeal as a matter of right. *See* Iowa Code § 814.6(1)(*a*) (2019). Under the new law, those convicted of a class A felony upon a guilty plea may file a direct appeal as a matter of right. *See id.* § 814.6(1)(*a*)(3). Under the new law, those convicted of any offense (other than a simple misdemeanor or ordinance violation) upon a guilty plea may file a direct appeal as a matter of right upon a showing of "good cause." *Id.* We have liberally interpreted "good cause" to mean the defendant need only show a "legally sufficient reason." *See State v. Boldon*, 954 N.W.2d 62, 69 (Iowa 2021); *State v. Damme*, 944 N.W.2d 98, 104 (Iowa 2020). A legally sufficient reason is a ground that potentially would afford the defendant relief. The new law thus restricts only a narrow class of defendants from pursuing a direct appeal as a matter of right: those who plead guilty to non-class A offenses and cannot articulate a legally sufficient reason to pursue a direct appeal. More bluntly, the new law prohibits those who plead guilty to non-class A offenses from pursuing frivolous appeals as a matter of right.

The text of the Iowa Constitution does not support Tucker's claim that this narrow restriction on who may appeal as a matter of right violates

the separation-of-powers doctrine. To the contrary, the text of the Iowa Constitution undermines Tucker's claim. The Iowa Constitution explicitly provides this court's appellate jurisdiction is subject to "such restrictions as the general assembly may, by law, prescribe." Iowa Const. art. V, § 4. And article V, section 14 of the Iowa Constitution provides it is "the duty of the general assembly . . . to provide for a general system of practice in all the courts of this state." Pursuant to this explicit constitutional allocation of power to the legislative department, "when the legislature prescribes the method for the exercise of the right of appeal or supervision, such method is exclusive, and neither court nor judge may modify these rules without express statutory authority, and then only to the extent specified." *Home Sav. & Tr. Co. v. Dist. Ct.*, 121 Iowa 1, 5, 95 N.W. 522, 524 (1903). "Our appellate jurisdiction must be exercised according to law." *Id.* "It is our duty to reject an appeal not authorized by statute." *Crowe v. De Soto Consol. Sch. Dist.*, 246 Iowa 38, 40, 66 N.W.2d 859, 860 (1954).

Historical practice confirms our textual understanding. Since the founding of our state, the legislative department has exercised its constitutional authority to create, expand, and restrict the right to appeal. In 1855, this court held the legislative department's power to restrict jurisdiction, as it appeared in the 1846 Constitution, allowed the legislature to foreclose the right of appeal in certain categories of cases:

> This court, however, only has appellate jurisdiction. How is this jurisdiction to be exercised, and what are the restrictions upon its exercise? The above provision of the constitution expressly states, that this court is to have this jurisdiction, "*under such restrictions as the General Assembly may by law prescribe.*" Here, then the power is clearly given to the General Assembly, to restrict this appellate jurisdiction. If under this provision, the legislature would not have the power to confer final jurisdiction on the District Court in particular cases, and thus restrict the appellate jurisdiction of this court,

> it is difficult to perceive what, if any, power it would have in this respect. We think that power has been exercised in this instance, and its propriety, we have neither the right nor disposition to question.

*Lampson v. Platt*, 1 Iowa (1 Clarke) 556, 560 (1855).

The legislature has adjusted appellate jurisdiction since the founding of the state. Statutes from the territorial government and early period of statehood show the legislature limited appeal as a matter of right in capital cases. In those cases, appeal was discretionary only. *See* Iowa Code §§ 3088, 3090–3091 (1851); Iowa Rev. Stat. ch. 47, §§ 76–77 (Terr. 1843); Iowa Stat. Laws, Courts §§ 76–77 (Terr. 1839). In 1924, the legislature granted defendants the right to appeal to this court "any judgment, action, or decision of the district court in a criminal case" for indictable and nonindictable offenses. Iowa Code §§ 13607, 13994 (1924). In 1972, the legislature established the modern unified court system and eliminated appeal as a matter of right for nonindictable offenses. *See* 1972 Iowa Acts ch. 1124, § 73(1) ("No judgment of conviction of a nonindictable misdemeanor . . . shall be appealed to the supreme court except by discretionary review as provided herein."). It also divested this court of the authority to review acquittals in nonindictable cases. *See id.* In 1979, the legislature allowed appeals as a matter of right from all "final judgment[s] of sentence" except for simple misdemeanors and ordinance violations, which are subject to discretionary review only. Iowa Code § 814.6(1)(*a*) (1979). Limiting appeal as a matter of right for those who plead guilty in the absence of good cause no more violates the separation-of-powers doctrine than does any of the historical limitations on appellate rights.

At the same time we recognize the legislative department's constitutional and historical authority to prescribe appellate jurisdiction, we note the authority is not unlimited. "[T]he legislature cannot exercise

judicial powers, and cannot reverse, vacate, or overrule the judgment or decree of a court." *Wilcox v. Miner*, 201 Iowa 476, 478, 205 N.W. 847, 848 (1925). Nor can the legislature "arbitrarily decree that courts are without subject matter jurisdiction in a certain class of cases then pending in the courts." *Schwarzkopf v. Sac Cnty. Bd. of Supervisors*, 341 N.W.2d 1, 6 (Iowa 1983) (en banc). Nor can the legislative department "change the character of the court" such that it shall be something other than "a court for the correction of errors at law." *Wine v. Jones*, 183 Iowa 1166, 1177, 168 N.W. 318, 321 (1918) (second quoting *Andrews v. Burdick*, 62 Iowa 714, 721, 16 N.W. 275, 279 (1883)). Ultimately, "[f]or the judiciary to play an undiminished role as an independent and equal coordinate branch of government nothing must impede the immediate, necessary, efficient and basic functioning of the courts." *Webster Cnty. Bd. of Supervisors*, 268 N.W.2d at 873.

Tucker has not carried his burden of establishing the new law impedes the immediate, necessary, efficient, and basic functioning of the courts. There is long-standing authority stating there is not a federal constitutional right to direct appeal. *See Griffin v. Illinois*, 351 U.S. 12, 18, 76 S. Ct. 585, 590 (1956) ("[A] State is not required by the Federal Constitution to provide . . . a right to appellate review . . . ."); *State v. Hinners*, 471 N.W.2d 841, 843 (Iowa 1991) ("There is no federal constitutional basis for the right of appeal.").[1] We have also held that a waiver of the right to appeal as part of a plea agreement is valid and enforceable. *See Hinners*, 471 N.W.2d at 844. And, we have said that as

---

[1]Justice Appel's special concurrence raises many issues involving the right to direct appeal and the effective assistance of counsel not raised or briefed by the parties. The only question presented in this appeal is whether the new law violates the constitutional separation of powers as set forth in article III, section 1 of the Iowa Constitution and equal protection under the Federal and State Constitutions. We need not and do not address any other issues.

a general rule, "Once a defendant has waived his right to a trial by pleading guilty, the State is entitled to expect finality in the conviction." *Mann*, 602 N.W.2d at 789. In addition, other state legislatures have limited guilty plea appeals. *See, e.g.*, Cal. Penal Code § 1237.5 (West 2021) (requiring a statement "showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" and a certificate of probable cause from the trial court).

Given all this, we cannot conclude the legislature impeded the basic functions of this court when it decided to disallow those who plead guilty from pursuing frivolous appeals as a matter of right. This is particularly true given this court's existing practice with respect to frivolous appeals. This court already restricts appeals following a plea of guilty through the enforcement of the frivolous appeal rule. *See* Iowa R. App. P. 6.1005. As a result, under current practice, this court dismisses many guilty plea appeals without full submission of the case on the merits. There may turn out to be little substantive difference between Iowa Code section 814.6(1)(*a*)(3) and our frivolous appeal rule. Going forward, rather than dismissing "frivolous" appeals from guilty pleas, this court may instead dismiss appeals from guilty pleas where there is not "good cause" to appeal. The difference may be largely procedural. Rule 6.1005 starts with a presumption that the appeal is nonfrivolous and places the burden on appellate counsel to demonstrate the appeal is frivolous. Under section 814.6(1)(*a*)(3), however, the defendant bears the burden of establishing good cause for the appeal to go forward. *See* Iowa Code § 814.6(1)(*a*)(3); *Damme*, 944 N.W.2d at 104.

### C.

We next address Tucker's claim that section 814.7 violates the separation-of-powers doctrine. Tucker contends the new law "purports to

make a judgment that no claim for ineffective assistance of counsel is ever strong enough to be decided on direct appeal." Tucker argues this legislative judgment was incorrect and the legislature's decision to route all claims of ineffective assistance of counsel to postconviction relief proceedings in the first instance strips this court of jurisdiction.

The new law does not deprive this court of jurisdiction. Instead, the new law requires claims of ineffective assistance of counsel be first filed in "an application for postconviction relief pursuant to chapter 822" rather than asserted on direct appeal. Iowa Code § 814.7. The new law also prohibits claims of ineffective assistance of counsel from being decided on direct appeal. *See id.* These are questions of authority and not jurisdiction. *See State v. Emery*, 636 N.W.2d 116, 119 (Iowa 2001) ("[S]ubject matter jurisdiction should not be confused with authority." (quoting *State v. Yodprasit*, 564 N.W.2d 383, 385 (Iowa 1997))). Section 814.7 simply does not deprive this court of jurisdiction.

Regardless, section 814.7 does not violate the separation-of-powers doctrine. "Section 814.7 is not a 'statute [ ] controlling [an] appeal[ ]' so much as it is a statute describing the procedure to bring a claim of ineffective assistance of counsel." *Hannan v. State*, 732 N.W.2d 45, 51 (Iowa 2007) (alterations in original). The Iowa Constitution explicitly provides the legislature with authority to provide for a general system of practice in all the courts of this state. *See* Iowa Const. art. V, §§ 4, 14. The decision to divert claims of ineffective assistance of counsel to postconviction relief proceedings is allowed by the textual allocation of power to the legislative department.

Further, the new law does not impede the immediate, necessary, efficient, and basic functioning of the courts. The statute does not divest the appellate courts of the judicial power. Nor does the statute transfer

judicial power to another department of the government. The statute does not direct the appellate courts how to decide a particular case. Nor does the statute change the character of the appellate courts to something other than courts for the correction of errors at law. Instead, the law merely diverts all claims of ineffective assistance of counsel to postconviction relief proceedings and requires they be resolved there in the first instance. Other courts have affirmed the constitutionality of statutes requiring certain claims be pursued in the first instance in postconviction relief proceedings. *See Wrenn v. State*, 121 So. 3d 913, 914–15 (Miss. 2013) (holding that defendant's conviction following a guilty plea could only be challenged under the postconviction statute rather than on direct appeal); *State v. Rettig*, 416 P.3d 520, 521 (Utah 2017) (rejecting claim that "the legislature lacks the constitutional power to require that [the defendant] pursue his claim through the Post-Conviction Remedies Act").

Not only does the new law not impede the basic functioning of this court, the new law is consistent with our practice. Our cases recognize claims of ineffective assistance of counsel can rarely be resolved on direct appeal and generally must be preserved for and developed in postconviction relief proceedings. *See Brown*, 930 N.W.2d at 844 ("We normally preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings."); *State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006) ("In only rare cases will the defendant be able to muster enough evidence to prove prejudice without a postconviction relief hearing."); *Manning v. State*, 654 N.W.2d 555, 562 (Iowa 2002) (recognizing that when an ineffective-assistance-of-counsel claim is raised in postconviction proceedings "an evidentiary hearing on the merits is ordinarily required" (quoting *Foster v. State*, 395 N.W.2d 637, 638 (Iowa 1986))); *Watson v. State*, 294 N.W.2d 555, 556 (Iowa 1980) (stating that an

evidentiary hearing for ineffective-assistance-of-counsel claims allows parties to develop all the "circumstances attending counsel's performance . . . which may be pertinent but are not a part of the criminal trial record"); *State v. Smith*, 282 N.W.2d 138, 143–44 (Iowa 1979) ("[T]he question of trial counsel's competency is more properly presented on postconviction relief."). The new law merely codifies, albeit more strongly, a judicial practice stretching back for almost a half-century.

Further, the legislative department's determination that claims of ineffective assistance of counsel should be resolved in the first instance in postconviction relief proceedings is supported by a variety of legitimate interests. Among others:

> Considering a claim of ineffective assistance of counsel on direct appeal (1) deprives the State, in responding to the defendant's arguments, of the benefit of an evidentiary hearing, including trial counsel's testimony; (2) places [the appellate courts] in the role of factfinder with respect to evaluating counsel's performance; . . . and (4) constitutes a significant drain on [appellate court] resources in responding to such claims.

*State v. Nichols*, 698 A.2d 521, 522 (Me. 1997), *holding modified by Petgrave v. State*, 208 A.3d 371 (Me. 2019).

D.

We hold sections 814.6(1)(*a*)(3) and 814.7, whether considered in isolation or in tandem, do not violate the separation-of-powers doctrine. The Iowa Constitution provides this court's appellate jurisdiction is subject to such restrictions as the legislature may prescribe. Iowa Const. art. V, § 4. The Iowa Constitution also tasks the legislature with the primary duty to provide for a system of practice in all Iowa Courts. *See id.* § 14. Here, the legislative department determined that defendants who plead guilty to non-class A offenses should not have the right to pursue an appeal without a showing of good cause. *See* Iowa Code § 814.6(1)(*a*)(3). The legislature

also determined all claims of ineffective assistance of counsel must be resolved in the first instance in postconviction relief proceedings rather than on direct appeal. *See id.* § 814.7. These decisions were within the legislative department's prerogative and not in derogation of the judicial power.

V.

Having concluded sections 814.6(1)(*a*)(3) and 814.7 are constitutional and applicable to this appeal, we turn to whether Tucker established good cause to pursue this appeal as a matter of right. Tucker "bears the burden of establishing good cause to pursue an appeal of [his] conviction based on a guilty plea." *Damme*, 944 N.W.2d at 104; *see also* Iowa Code § 814.6(1)(*a*)(3) (stating that the provision prohibiting an appeal from a conviction where the defendant pleaded guilty does not apply "in a case where *the defendant establishes* good cause" (emphasis added)).

The statute does not define "good cause." In *State v. Damme*, we stated that "good cause" in section 814.6 means a "legally sufficient reason." 944 N.W.2d at 104. We explained that what constituted a legally sufficient reason was context specific. *See id.* There, we held "that good cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea." *Id.* at 105. We explained that "[a] sentencing error invariably arises after the court has accepted the guilty plea" and "[t]his timing provides a legally sufficient reason to appeal notwithstanding the guilty plea." *Id.*

Tucker contends we should expand the concept of good cause and hold that a claim that a plea is not intelligently or voluntarily made constitutes good cause to appeal as a matter of right. We respectfully disagree. A legally sufficient reason to appeal as a matter of right is a reason that, at minimum, would allow a court to provide some relief on

direct appeal. Here, there is no such possibility. Tucker pleaded guilty and requested immediate sentencing. He waived his right to file a motion in arrest of judgment. His failure to file a motion in arrest of judgment precludes appellate relief. *See* Iowa R. Crim. P. 2.24(3)(*a*) ("A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal."). We thus cannot provide relief on direct appeal.

We have recognized two exceptions to this bar, but neither exception would allow for the possibility of relief on the facts of this case. First, we have recognized a defendant may challenge his guilty plea on direct appeal despite not filing a motion in arrest of judgment where the district court failed to adequately advise the defendant of the necessity for filing a motion in arrest of judgment and the consequences of not filing a motion in arrest of judgment. *See State v. Loye*, 670 N.W.2d 141, 149–50 (Iowa 2003) (stating court's failure to comply with rule 2.8(2)(*d*) and advise of the consequences of the failure to file a motion in arrest of judgment operates to reinstate the defendant's right to appeal the legality of his plea). Here, Tucker was adequately advised and waived the right.

Second, we have allowed a defendant to indirectly challenge his guilty plea on direct appeal despite not filing a motion in arrest of judgment "if the failure to file a motion in arrest of judgment resulted from ineffective assistance of counsel." *Straw*, 709 N.W.2d at 133. Of course, because we have just upheld the constitutionality of section 814.7, this court is without the authority to decide ineffective-assistance-of-counsel claims on direct appeal. Thus, the second exception no longer provides an avenue for relief on direct appeal.

Tucker has not advanced a legally sufficient reason to pursue an appeal as a matter of right. He was adequately advised of the necessity of

filing a motion in arrest of judgment to challenge his guilty plea and the consequences of failing to do so. Upon being properly advised of his right and the consequences for waiving that right, Tucker waived the right and proceeded to immediate sentencing. He has no right to assert a claim of ineffective assistance of counsel on direct appeal, and this court has no authority to decide a claim of ineffective assistance of counsel on direct appeal. Under the circumstances, the appellate courts cannot provide relief. Tucker has thus not established good cause to pursue his appeal as a matter of right.

VI.

Because Tucker has not established good cause to invoke this court's appellate jurisdiction, the appeal must be dismissed.

**APPEAL DISMISSED.**

Waterman, Mansfield, and Oxley, JJ., join this opinion and Christensen, C.J., and McDermott, J., join as divisions I–III, V, and VI. McDermott, J., joined by Christensen, C.J., concur specially. Appel, J., concurs specially.

**APPEL, Justice (concurring specially).**

Under our law prior to the enactment of S.F. 589, 2019 Iowa Acts ch. 140, there is no basis for us to consider the merits of Tyjuan Tucker's claim that his plea was involuntary. The claim Tucker raises clearly requires the development of an evidentiary record. *See, e.g., State v. Petty*, 925 N.W.2d 190, 196 (Iowa 2019) (recognizing that the showing of ineffective assistance of counsel of guilty plea "often requires a more thorough record than the one provided on direct appeal"); *State v. Bearse*, 748 N.W.2d 211, 219 (Iowa 2008) ("This record makes it impossible for [defendant] to muster sufficient evidence to satisfy his burden of demonstrating prejudice. His claim should be preserved for postconviction proceedings."); *State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006) ("In only rare cases will the defendant be able to muster enough evidence to prove prejudice without a postconviction relief hearing."). As a result, aside from S.F. 589, Tucker is not entitled to relief and must pursue his claim in postconviction relief. This appeal challenging the merits of the guilty plea cannot be decided on direct appeal under our law without any consideration of the constitutionality of various provisions of S.F. 589.

So, that should be it. There is no point in addressing the constitutional issues, particularly in light of our well-established doctrine of constitutional avoidance. *See State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 85 (Iowa 2014) ("The doctrine of constitutional avoidance suggests the proper course in the construction of a statute may be to steer clear of 'constitutional shoals' when possible."); *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 74 (Iowa 2010) ("If fairly possible, a statute will be construed to avoid doubt as to constitutionality."); *State v. Fuhrmann*, 261 N.W.2d 475, 477 n.1 (Iowa 1978) (en banc) ("An appellate court should refrain from

a constitutional analysis of statutes if a case may be disposed of on other grounds."). But the majority attaches the dispositive but narrow nonconstitutional disposition as a caboose to its opinion. It then moves to the forefront its constitutional essay.[2]

---

[2]As the United States Supreme Court recognized in *Steel Co. v. Citizens for Better Environment*, under federal law, there is a hypothetical jurisdiction doctrine that suggests that federal courts should consider jurisdictional issues before considering the merits of a case. 523 U.S. 83, 94–95, 118 S. Ct. 1003, 1012 (1998). The general notion is that if there is no subject matter jurisdiction in a case, any discussion of the merits is only an advisory opinion. One of the negative effects of hypothetical jurisdiction is that it denies "state courts the autonomy that Congress, as well as the framers of the Constitution, sought to preserve." Ely Todd Chayet, *Hypothetical Jurisdiction and Interjurisdictional Preclusion: A "Comity" of Errors*, 28 Pepp. L. Rev. 75, 84 (2000). The *Steel Co.* doctrine thus restricts the degree that federal courts of limited jurisdiction invade what ordinarily might be considered the province of state courts.

In *In re Guardianship of Matejski*, 419 N.W.2d 576 (Iowa 1988) (en banc) and *Heartland Express v. Gardner*, 675 N.W.2d 259 (Iowa 2003), we embraced the *Steel Co.* concept. In *In re Matejski*, we stated that the nature of subject matter jurisdiction makes the issue "an abstract inquiry unrelated and precedent to the rights of the parties to a particular case." *Id.* at 579. And, in *Heartland Express*, we cited *Steel Co.* favorably for the proposition that jurisdiction goes to the core of the judicial power and must exist prior to the time that judicial power is exercised. 675 N.W.2d at 266. In these cases, we simply cited the federal precedent and cut and pasted the citations into the Iowa cases without any consideration of the reasons for the *Steel Co.* doctrine or its potential limitations.

In the federal courts, however, a consensus has developed that *Steel Co.* applies only to Article III standing and does not implicate hypothetical statutory jurisdiction. *See* Joshua S. Stillman, *Hypothetical Statutory Jurisdiction and the Limits of Federal Judicial Power*, 68 Ala. L. Rev. 493, 510 (2016). Of course, there is no Article III in the Iowa Constitution, and our state courts are courts of general jurisdiction, not limited jurisdiction. And, to the extent the hypothetical jurisdiction doctrine of *Steel Co.* was designed to protect the autonomy of state courts, that rationale does not apply to cases pending in state courts. Thus, the incorporation of the *Steel Co.* doctrine to state law statutory jurisdictional questions is problematic because its purpose of protecting state court autonomy does not apply when state courts of general jurisdiction are considering issues on the merits. And, if the claimed desirability of uniformity with federal precedent is the principle at work, the federal courts have now abandoned the doctrine except for Article III constitutional claims and, applying the uniformity reasoning, so should we. .

In any event, the *Steel Co.* doctrine should not apply in this case. We should recognize that the *Steel Co.* doctrine was fashioned for federal and not state courts and has now evolved to apply narrowly only to questions of subject matter jurisdiction of federal courts under Article III of the United States Constitution. Further, in this case, the potential disposition that avoids a constitutional determination is not a holding on the merits but is procedural in nature and based on preexisting law. Under these circumstances, the notion that we should address statutory jurisdiction first has no application.

I concur in the result in this case only because under our prior law, Tucker's claim cannot be addressed on direct appeal. But because the majority has painted on a large constitutional canvas in a way I find misses important parts of the constitutional landscape, I address some of the hypothetical constitutional issues addressed in the majority opinion.

## I. Limited Scope of Constitutional Claims In This Case.

At the outset, I think it is important to emphasize the issues in play in this case. The majority has decided that S.F. 589 does not violate separation-of-powers principles and does not violate state and federal concepts of equal protection.

The majority opinion does not consider whether the restrictions of S.F. 589 violate due process of law and the right to counsel. For instance, an argument may be made that notwithstanding ancient precedent, a person convicted of a crime is entitled by due process to at least one appeal as a matter of right. *See* Marc M. Arkin, *Rethinking the Constitutional Right to a Criminal Appeal*, 39 UCLA L. Rev. 503, 521–33 (1992); Cassandra Burke Robertson, *The Right to Appeal*, 91 N.C. L. Rev. 1219, 1259, 1263–64 (2013). If there is a due process right to one appeal, the first appeal for a defendant asserting an ineffective-assistance-of-counsel claim under S.F. 589 would be a petition for postconviction relief under Iowa Code Chapter 822. *See Martinez v. Ryan*, 566 U.S. 1, 13–15, 132 S. Ct. 1309, 1318–19 (2012). If the petition for postconviction relief is the first appeal as a matter or right, an indigent defendant would be entitled to the assistance of counsel at state expense. *See Douglas v. California*, 372 U.S. 353, 355–56, 83 S. Ct. 814, 815–16 (1963) (holding that an indigent defendant is constitutionally entitled to representation of counsel in a first appeal as a matter of right); *Grinols v. State*, 74 P.3d 889, 894–95 (Alaska 2003) (recognizing a due process clause right to counsel in postconviction-

relief proceedings under the Alaska Constitution); *Deegan v. State*, 711 N.W.2d 89, 98 (Minn. 2006) (en banc) (holding that a defendant is entitled to counsel in one appeal as a matter of right under *Douglas* and the Minnesota Constitution); *State v. Quixal*, 70 A.3d 749, 755–56 (N.J. Super. Ct. App. Div. 2013) (holding that there is a right to counsel in a first appeal whether on direct appeal or through postconviction proceedings).

But the provisions of Iowa Code chapter 822 arguably do not adequately provide for assistance of counsel in a timely and effective manner. First, under chapter 822, a person seeking to file a petition may not be provided with the right to assistance of counsel when drafting the petition, a critical stage in the postconviction-relief process. *See* Iowa Code ch. 822 (2019).[3] Yet, in the development of a postconviction-relief claim, a lawyer is critical in evaluating the record and doing necessary investigation. *See generally* Ken Strutin, *Litigating from the Prison of the Mind: A Cognitive Right to Post-Conviction Counsel*, 14 Cardozo Pub. L., Pol'y, & Ethics J. 343, 383 (2016) (discussing the difficulties a pro se litigant faces in postconviction proceedings); Kathyrn E. Miller, *The Attorneys Are Bound and the Witnesses Are Gagged: State Limits on Post-Conviction Investigation in Criminal Cases*, 106 Calif. L. Rev. 135 (2018) (discussing the important role of attorneys in conducting investigations for postconviction-relief proceedings). The requirements of Iowa Code section 822.3 and section 822.4 include specific pleading, the attachments of documents, and inclusion of affidavits, records, and other evidence. Complying with these provisions will be very difficult for an indigent, unschooled defendant without a lawyer's help.

---

[3]Iowa Code section 822.5 provides that "legal representation shall also be made available to the applicant in the preparation of the application." But the statute provides no mechanism for the appointment of counsel prior to the filing of the application for postconviction relief.

Second, under the postconviction-relief statute, a petition may be dismissed by the court. Iowa Code § 822.6(2), (3). Thus, an unartfully drafted petition prepared without the help of a lawyer is subject to dismissal without further ado.

Third, the appointment of counsel under Iowa Code section 822.5 is discretionary. *See Leonard v. State*, 461 N.W.2d 465, 467 (Iowa 1990); *Furgison v. State*, 217 N.W.2d 613, 615 (Iowa 1974), *superseded by statute on other grounds by* Iowa Code § 822.3A (2020). Thus, a court may decline to appoint counsel based on the nature of the pleading prepared by an unschooled indigent defendant who does not provide a reliable baseline to the court for deciding a claim. Any refusal to appoint counsel in a postconviction-relief action that amounts to a first appeal as a matter of right would raise significant constitutional concerns.

Fourth, there are issues of institutional ability to deliver trained lawyers to handle postconviction-relief cases. The administrative rules provide payment of $63 for postconviction-relief work, subject to various caps. Iowa Admin. Code r. 493—12.4, .6. There is a disturbing history in some cases of inordinate delay in postconviction-relief cases that may not reflect well on appointed counsel. *See Linn v. State*, 929 N.W.2d 717, 727–28 (Iowa 2019) (noting seven years elapsed from filing of application for postconviction relief to erroneous district court dismissal of case); *Mablin v. State*, 2019 WL 4297860, *7 (Iowa Ct. App. Sept. 11, 2019) (noting that a trial was held nearly eight years after the postconviction-relief application).

These substantial questions, however, and no doubt others, are not presented in this case. The above discussion takes no view on the merits but simply illustrates the outer boundaries of the majority opinion.

**II. S.F. 589, Legislative Limitations on Subject Matter Jurisdiction, and Separation of Powers.**

**A. Introduction.**

1. *Nature of the problem: Legislative override of judicial precedents controlling docket.* S.F. 589 limits a defendant's access to direct appeal in two ways. First, S.F. 589 limits the ability of a criminal defendant to directly appeal ineffective-assistance-of-counsel claims. 2019 Iowa Acts ch. 140, § 31 (codified at Iowa Code § 814.7 (2020)). And second, the legislature has stated that direct appeal of a conviction based upon a guilty plea is not permitted unless the case involves a class "A" felony or for "good cause." *Id.* § 28 (codified at Iowa Code § 814.6(1)(*a*)(3) (2020)). The question arises whether the legislature, structuring the nature of this court's appellate docket, violates separation-of-powers concepts of the Iowa Constitution.

2. *Relevant Iowa constitutional provisions.* The Iowa Constitution expressly vests the judicial power with the courts. Specifically, article V, section 1 provides, "The judicial power shall be vested in a supreme court, district courts, and such other courts, inferior to the supreme court, as the general assembly may, from time to time, establish." Iowa Const. art. V, § 1. Under the Iowa Constitution, the judicial power is vested in courts. While the concept of separation of powers is not expressly stated in the United States Constitution, article III, section 1 of the Iowa Constitution provides, "no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others." *Id.* art. III, Three Separate Departments, § 1.

There are a number of additional Iowa constitutional provisions related to the exercise of judicial power. Article V, section 4 relates to jurisdiction of the supreme court. It provides,

> The supreme court shall have appellate jurisdiction only in cases in chancery, and shall constitute a court for the correction of errors at law, under such restrictions as the general assembly may, by law, prescribe; and shall have power to issue all writs and process necessary to secure justice to parties, and shall exercise a supervisory and administrative control over all inferior judicial tribunals throughout the state.

*Id.* art. V, § 4. Under article V, section 4, the question arises as to the scope of the legislature's power to impose "restrictions" on courts that exclusively exercise the judicial power in light of their broad power "to issue all writs and process necessary to secure justice" and to "exercise supervisory and administrative control over inferior judicial tribunals." *Id.*

Article V, section 6 relates to the jurisdiction of the district court. It provides,

> The district court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law.

*Id.* art V, § 6.

Finally, article V, section 14 provides, "It shall be the duty of the general assembly to provide for the carrying into effect of this article, and to provide for a general system of practice in all the courts of this state." *Id.* art. V, § 14. Thus, while the supreme court is given supervisory and administrative authority over inferior courts, the general assembly is directed to develop a general system of practice for the courts.

3. *Larger constitutional context.* Before considering the specific provisions of the Iowa Constitution, it is essential to recognize and

acknowledge the constitutional context in which the specific provisions related to the judicial function appear. Article I, the first substantive provision of the Iowa Constitution, is the Iowa Bill of Rights. *Id.* art. I. The Iowa Bill of Rights includes an expansive Declaration of Rights provision in article I, section 1 and proceeds to provide a series of provisions commonly found in one form or another in various state constitutions and in the first amendments to the United States Constitution. *Id.* art. I, § 1.

Those who believe history matters in constitutional interpretation will recognize that the placement of the Bill of Rights in the very first article, as well as insertion of the Declaration of Rights provision as the very first section of the first article, were intentional acts of the framers. The sequencing of the provisions of the Iowa Constitution was not the product of chance. As the chair of the committee that developed the Iowa Bill of Rights in the 1857 Constitution stated, the Bill of Rights is the most important section of the Iowa Constitution. The Iowa Bill of Rights was the product of a highly individualistic age where the need to protect the individual against government overreach was considered of prime importance. The limitations in the Iowa Bill of Rights were stated as first principles which could not be offended or invaded by acts of the executive or legislative branches.

If nothing else, the Iowa framers were practical individuals. So, if the Iowa Bill of Rights contain first principles that cannot be offended or invaded by the executive or legislative branches, how did the framers ensure that the primacy would be realized under the Iowa Constitution? The answer is clear. An independent judicial branch is vested exclusively with the judicial power. This independent third branch of government is given the power to decide constitutional questions and ensure that the

Iowa Bill of Rights is observed by the legislative and executive branches of government.

If the Iowa constitutional structure is to be preserved, the legislature cannot have the power to prevent the Iowa courts from performing their essential constitutional role. If the Iowa legislature had the power, for instance, to enact legislation preventing the Iowa courts from considering constitutional matters, the entire structure of the Iowa Constitution, including the primacy of the Iowa Bill of Rights and the concepts of separations of power, would collapse. If the legislature had the power to strip constitutional matters from judicial review, there would be no meaningful article V independent judiciary. The ability of courts to enforce the Iowa Bill of Rights—provisions specifically designed to control and contain majoritarian branches of government—would, in a remarkable act of legal jujitsu, become a matter of legislative grace. Such a development would come as a great shock to the founding generation and would dramatically alter the nature of our constitutional government.

### B.  State Separation-of-Power Precedents.

1. *Overview of state separation of powers cases.* There has been a wide variety of state court cases involving application of separation-of-powers concepts to legislation designed to control the operations of the judicial branch. Some of the cases involve legislative attempt to control the manner in which the judicial branch conducts its business. *See In re Petition of Governor*, 846 A.2d 1148, 1155 (N.H. 2004) (per curiam) (noting that if the statute were upheld, it "would effectively grant the legislature free license to alter the means of appointment and the term of the chief justice based upon the politics of the moment"); *see also Solomon v. State*, 364 P.3d 536, 547 (Kan. 2015) (noting the legislative control of appointment is "at odds with the 'clear lines of responsibility and authority'

advocated by the legislature's own Judicial Study Advisory Committee" which are meant "to reduce 'fragmentation of judicial power' "); *Op. of the Justices to the Senate,* 376 N.E.2d 810, 813–14 (Mass. 1978) ("As to attorneys admitted to practice before the courts of the Commonwealth, we retain the ultimate authority to control their conduct in the practice of law. . . . If the judicial department promulgates a rule imposing standards higher than or in conflict with those imposed by the legislation, the judicial rule would prevail." (citations omitted)).

A number of cases from other states have considered whether legislative efforts to control judicial processes offend separation of powers. *See, e.g., Solimito v. State,* 122 N.E. 578, 578 (Ind. 1919) ("This court has power to make its own rules as to briefs, and as to the conduct of business before the court. It is not a legislative function to make rules for the court, or to say what the court shall consider a sufficient brief."); *Coate v. Omholt,* 662 P.2d 591, 593–97 (Mont. 1983) (invalidating several statutes which imposed time limitations for rendering a decision and imposed sanctions for violations of the prescribed time limits); *State v. LaFrance,* 471 A.2d 340, 346 (N.H. 1983) (per curiam) ("[T]he power of the judiciary to control its own proceedings, the conduct of its participants, the actions of officers of the court and the environment of the court is a power absolutely necessary for a court to function effectively and do its job administering justice."). Specifically, many states have held that court procedural rules trump legislative acts so long as the rule does not implicate a substantive right. *See, e.g., Duff v. Lee,* 439 P.3d 1199, 1206–08 (Ariz. Ct. App.) (holding that a statute which required courts adopt mandatory arbitration was in direct contrast to and could not be harmonized with the supreme court procedural rule which implemented the Fast Trial and Alternative Resolution Program and therefore in violation of separation of powers),

*aff'd in part, vacated in part,* 476 P.3d 315 (Ariz. 2019); *State v. Rollinson,* 526 A.2d 1283, 1289 (Conn. 1987) ("General Assembly lacks the power to enact rules governing [court] procedure . . . ."); *Borer v. Lewis,* 91 P.3d 375, 380–81 (Colo. 2004) (en banc) (holding that if a legislative act were read to override a court procedural rule, it would be an unconstitutional "infringement on the judiciary's authority to promulgate procedural rules"); *J. T. v. O'Rourke,* 651 P.2d 407, 410 n.2 (Colo. 1982) (en banc) ("The court is free to consider and evaluate procedural enactments of the General Assembly; though, in cases of conflict, the court's procedural rule would necessarily control a procedural statute."); *Commonwealth v. DeWeese,* 141 S.W.3d 372, 377 (Ky. 2003) ("[I]t would be a violation of separation of powers for the legislature to promulgate rules of practice and procedure for the court."); *People v. Watkins,* 818 N.W.2d 296, 308 (Mich. 2012) ("In accordance with separation-of-powers principles, this Court's authority in matters of practice and procedure is exclusive and therefore beyond the Legislature's power to exercise."); *Berkson v. LePome,* 245 P.3d 560, 565 (Nev. 2010) (en banc) ("[T]he legislature may not enact a procedural statute that conflicts with a pre-existing procedural rule, without violating the doctrine of separation of powers, and . . . such a statute is of no effect." (omission in original) (quoting *State v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe,* 11 P.3d 1209, 1213, (Nev. 2000)); *Ammerman v. Hubbard Broad. Inc.,* 551 P.2d 1354, 1359 (N.M. 1976) ("[U]nder our Constitution the Legislature lacks power to prescribe by statute rules of evidence and procedure, this constitutional power is vested exclusively in this court, and statutes purporting to regulate practice and procedure in the courts cannot be binding.").

All of the above cases must be read with caution. In particular, there is a variety of language used in state constitutions related to the

intersection of judicial and legislative powers. The above cases, however, collectively demonstrate the difficulty in drawing the line between the powers of the legislative and judicial branches in a variety of contexts.

2. *State separation-of-powers cases related to subject matter jurisdiction.* A number of other states have grappled with the question of whether the legislature has the power to restrict the subject matter jurisdiction of constitutionally established courts. For example, the Wisconsin Constitution provides that the circuit courts "except as otherwise provided by law, . . . shall have original jurisdiction in all matters civil and criminal within this state." Wis. Const. art. 7, § 8. The obvious question is whether the legislature has the power, under the "except as otherwise provided by law" language, to eliminate by statute subject matter jurisdiction from the Wisconsin courts. In *Mueller v. Brunn*, the Wisconsin Supreme Court said no. 313 N.W.2d 790, 792 (Wis. 1982) *abrogated on other grounds by Vill. of Trempealeau v. Mikrut*, 681 N.W.2d 190 (Wis. 2004). The *Mueller* court emphasized that the subject matter jurisdiction to entertain actions is vested in the courts by the Wisconsin Constitution. *Id.* As a result, subject matter jurisdiction is constitutionally established. *See id.* The *Mueller* court, however, recognized that the legislature under the "except as otherwise provided by law" language has the authority to abolish statutory causes of action altogether, thereby indirectly eliminating subject matter jurisdiction, and to set standards for exhaustion of administrative remedies or for establishing primary jurisdiction prior to invocation of the court system's subject matter jurisdiction. *Id.*; *see also Mikrut*, 681 N.W.2d at 195.

Other state jurisdictions have held that the legislature cannot impact the subject matter jurisdiction vested in the courts by state constitutions. *See, e.g., Osborn v. Zoning Bd. of App.*, 11 Conn. Supp. 489,

491 (Conn. Super. Ct. 1943) (stating that the Connecticut constitution "confers no power on the General Assembly to define the jurisdiction of a superior court"); *Clifton v. State*, 53 Ga. 241, 241 (1874) (holding the Georgia constitutional provision providing courts with jurisdiction in all cases "except as otherwise provided in this Constitution" does not provide basis for general assembly to remove jurisdiction from superior courts); *Am. Beauty Homes Corp. v. Louisville & Jefferson Cnty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 453–54 (Ky. 1964) (holding that "the legislature can neither reduce nor enlarge the scope of the judicial function"); *Smith v. S. Union Gas Co.*, 269 P.2d 745, 747 (N.M. 1954) ("We have held in many cases the district court gets its jurisdiction from the Constitution, and it is not to be circumscribed or restrained by the legislature."); *Mitchell v. Cornwall*, 314 S.W.2d 437, 439 (Tex. Civ. App. 1958) ("[C]onstitutional jurisdiction of a district court cannot be taken away [by] any legislative act.").

The above cases involve legislative efforts to impair the subject matter jurisdiction established by state constitutions at the trial court level. But the same reasoning applies to efforts to eliminate jurisdiction in constitutionally established appellate courts. For instance, in *Mackensie & Shea v. Rhode Island Hospital Trust*, the Rhode Island Supreme Court emphasized that the Supreme Court's "final revisory and appellate jurisdiction upon all questions of law and equity . . . cannot be curtailed nor impaired by statute." 122 A. 774, 776 (R.I. 1923).

There is, however, authority to the contrary. For example, a Hawaii appellate court has declared that the legislative power under the Hawaii Constitution includes "the power to establish the subject matter jurisdiction of [the] state court system." *Alaka'i Na Keiki Inc. v. Hamamoto*, 257 P.3d 213, 219 (Haw. Ct. App. 2011) (quoting *Sherman v. Sawyer*, 621

P.2d 346, 348 (Haw. 1980)), *judgment vacated by Alakaʻi Na Keiki, Inc. v. Mayatoshi*, 277 P.3d 988 (Haw. 2012).

Some state constitutions explicitly provide for curtailing of the subject matter jurisdiction of constitutional courts by the legislature. For example, the Idaho Supreme Court has noted that under a constitutional provision that provides for appellate court jurisdiction "as may be conferred by law," the legislature can curtail subject matter jurisdiction so long as the jurisdiction is no less broad than the constitution explicitly mandates. *Fox v. Flynn*, 150 P. 44, 46 (Idaho 1915). The Indiana Supreme Court has held that under article VII, section 8 of the state constitution which provides courts with civil and criminal jurisdiction "as may be prescribed by law," the legislature may remove "certain types of cases [from constitutional courts] to courts peculiarly constituted" by the legislature for the determination of selected issues. *State ex Rel. Gannon v. Lake Cir. Ct.*, 61 N.E.2d 168, 172 (Ind. 1945).

**C. Iowa Separation-of-Power Precedents Regarding Subject Matter Jurisdiction.** The first case involving jurisdiction of courts in Iowa arose under the Iowa Constitution of 1846. In *Hutton v. Drebilbis*, the court emphasized that,

> We do not understand by this article that the legislature have the right to limit or restrict the jurisdiction thus conferred upon the district courts by the constitution, but merely to define and regulate the manner in which that jurisdiction shall be employed.

2 Greene 593, 594–95 (Iowa 1850). The *Hutton* court went on to observe that "[t]he fundamental law of the state has fixed the jurisdiction of the district courts, and it is not within the power of the legislature to change or modify it." *Id.* at 595.

The principles of *Hutton* were applied under the Iowa Constitution of 1857 in *Laird Bros. v. Dickerson,* where the court stated,

> It is . . . clear, beyond question, that the District Courts have general jurisdiction of all matters brought before them. But the manner of the exercise of this general and inherent jurisdiction is prescribed by law. The legislature may not deprive the District Court of its jurisdiction, nor, in the least, limit it; all that it is authorized to do is to prescribe the manner of its exercise.

40 Iowa 665, 670 (1875).

The *Laird* court went on to affirm legislation that provided that in cases involving the attachment of property when the defendant is not served, the action must be brought in the county where the property attached or part of it was located. *Id.* at 670–71. According to the *Laird* court, such a provision would not deprive the district court of its general jurisdiction over the subject matter. *Id.* at 670. The court distinguished the attachment statute as a manner of exercising a lawsuit rather than deprivation of judicial power from the courts because *a court* still had jurisdiction even if the suit was brought in the wrong county. *Id.* at 671.

The thrust of *Hutton* and *Laird* is unmistakable. The legislature may not remove subject matter jurisdiction from state courts. The strength of the constitutional provisions related to jurisdiction of district court was affirmed in *In re Guardianship of Matejski,* 419 N.W.2d 576, 577–78 (Iowa 1988) (en banc). In *Matejski,* the court considered whether the district court had subject matter jurisdiction over a controversy involving the proposed sterilization by a guardian of a person with an intellectual disability. *Id.* at 576. There was no legislative authorization of subject matter jurisdiction over such disputes. *Id.* at 580. The court held that under article V, section 6, the district courts had jurisdiction over such

claims notwithstanding the lack of legislative action.  *Id.*  The court cited with favor the *Hutton* and *Laird* precedents.  *Id.* at 577.

**D.  Discussion.**  In my view, under the Iowa Constitution and the applicable precedents, the legislature may not engage in jurisdiction stripping of Iowa courts on constitutional matters under an expansive view of its power to impose "restrictions" on constitutional courts.  The meaning of the Restrictions Clause must be understood in the larger constitutional context.  A broad interpretation of permissible restrictions that would prevent this court from considering constitutional questions would jeopardize the independence of the judicial branch and undermine the effective enforcement of constitutional limitations on the executive and legislative branches.[4]  If the legislature had the power to strip jurisdiction of the courts over constitutional matters, the Iowa constitutional structure of limited government enforced by judicial review would be undermined.  *See* Henry P. Monaghan, *Jurisdiction Stripping Circa 2020: What The Dialogue (Still) Has to Teach Us*, 69 Duke L.J. 1, 22 (2019) [hereinafter Monaghan, *Jurisdiction Stripping*].  As noted by Henry Hart in his classic work many years ago considering the scope of the Exceptions Clause of the United States Constitution, sensible people do not "read[] the Constitution as authorizing its own destruction."  Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362, 1365 (1953) [hereinafter Hart, *The Dialogue*].  *See generally* Monaghan, *Jurisdiction Stripping*, 69 Duke L.J. at 17–18 (discussing why the Exceptions Clause should not be read in an

---

[4]For purposes of jurisdiction stripping, there is a distinction between constitutional claims, which may not be stripped, and statutory claims which can be created and extinguished by the legislature.  *See Webster v. Doe*, 486 U.S. 592, 603–05, 108 S. Ct. 2047, 2053–54 (1988) (construing congressional action to bar judicial consideration of statutory but not constitutional claims to avoid jurisdiction stripping difficulties.).

overbroad manner, and quoting James Madison as writing "[a]n interpretation that destroys the very characteristic of the government cannot be just").[5]

The question remains, however, whether the provisions of S.F. 589 are really jurisdiction stripping or are they simply permissible "restrictions" that the general assembly may prescribe under article I, section 3 of the Iowa Constitution. Under S.F. 589, the courts remain the ultimate arbitrators of all ineffective-assistance-of-counsel claims and all constitutional claims arising from guilty pleas. The legislation does not deny any judicial forum for a claim of ineffective assistance of counsel or for constitutional claims arising from plea bargaining.

Yet, prior to the enactment of S.F. 589, some claims of ineffective assistance of counsel, and some challenges to guilty pleas, were permitted

_____

[5]There is a rich literature regarding the power of Congress to engage in jurisdiction stripping of federal courts under the Exceptions Clause of the United States Constitution. United States Constitution, Article III, Section 2, Clause 2. *See generally* Richard H. Fallon, Jr., *Jurisdiction-Stripping Reconsidered*, 96 Va. L. Rev. 1043 (2010) (discussing various views on federal jurisdiction stripping and how the United States Supreme Court has not squarely determined the constitutional boundary of congressional power to strip jurisdiction); Tara Leigh Grove, *The Article II Safeguards of Federal Jurisdiction*, 112 Colum. L. Rev. 250 (2012) (discussing the limits of congressional power to strip jurisdiction and the Executive Branch's role in protecting the autonomy of the judiciary); Gerald Gunther, *Congressional Power to Curtail Federal Court Jurisdiction: An Opinionated Guide to the Ongoing Debate*, 36 Stan. L. Rev. 895 (1984) (discussing congressional power under the Exceptions Clause and various theories on the limitation of congressional power over the judiciary); Hart, *The Dialogue*, 66 Harv. L. Rev. 1362 (discussing the scope of the Exceptions Clause and congressional power to limit jurisdiction); Alexander K. Hooper, *Jurisdiction-Stripping: The Pledge Protection Act of 2004*, 42 Harv. J. on Legis. 511 (2005) (discussing the issues surrounding one proposed specific jurisdiction stripping act); Monaghan, *Jurisdiction Stripping*, 69 Duke L.J. 1 (discussing the changes in the jurisdiction stripping literature since Hart's dialogue); Howard M. Wasserman, *Jurisdiction, Merits, and Non-Extant Rights*, 56 U. Kan. L. Rev. 227 (2007) (discussing the history of jurisdiction stripping and various models analyzing congressional power to strip jurisdiction); Theodore J. Weiman, Comment, *Jurisdiction Stripping, Constitutional Supremacy, and the Implications of Ex Parte Young*, 153 U. Pa. L. Rev. 1677 (2005) (discussing the theory of constitutional supremacy to limit the power of congress to strip jurisdiction). Most recently, the Supreme Court rejected an attempt by Congress to restrict its habeas corpus jurisdiction in *Boumediene v. Bush*, 553 U.S. 723, 796-98, 128 S. Ct. 2229, 2276–77 (2008).

to be presented and decided on direct review without further factual development. For years, such claims were considered as within the subject matter jurisdiction of the supreme court.

Whether the legislature cannot strip away this long acknowledged jurisdiction is a close question. If the Iowa Constitution establishes that district courts are constitutionally courts of general jurisdiction, not subject to legislative contraction, and the Iowa Supreme Court is constitutionally the appellate court of all inferior tribunals, it logically follows that the Iowa Supreme Court has the subject matter jurisdiction to consider on direct appeal any issue where the record is sufficient to permit resolution.

The treatment of guilty pleas under S.F. 589 is also in tension with our supervisory authority over inferior courts. In the exercise of our supervisory authority over inferior tribunals, we have promulgated Iowa Rule of Criminal Procedure 2.8(2)(*d*). The purpose of the rule is in part to ensure due process in the guilty plea process; namely, to ensure that a criminal defendant who pleads guilty does so on a knowing and voluntary basis. But the rule goes beyond that. It is designed to ensure that district courts establish the appropriate record for the entry of a guilty plea. *See McCarthy v. United States*, 394 U.S. 459, 464–66, 89 S. Ct. 1166, 1170–71 (1969). On appeal, it is not difficult to determine whether the district court complied with the rule. All that is required is examination of the court's colloquy with the defendant. *See, e.g.*, *State v. Fisher*, 877 N.W.2d 676, 681 (Iowa 2016). And we have determined that such cases may be reviewed on direct appeal and that prejudice inheres in the failure of the district court to substantially comply with the rule. *Id.* at 682–83. There is literally no rationale for diverting these cases to postconviction-relief proceedings.

Under our constitutional arrangement, the Iowa Supreme Court has the supervisory authority over inferior tribunals. Iowa Const. art. V, § 4. Iowa Rule of Criminal Procedure 2.8(2)(*d*) and its implementation are plainly part of our supervisory power over inferior tribunals. *See, e.g., State v. Dahl*, 874 N.W.2d 348, 351, 353 (Iowa 2016). The legislature does not have the power to override this rule by declaring that a defendant must show that it is "more likely than not" that the defendant would have gone to trial but for the noncompliance with the rule. By attempting to override our approach to guilty pleas in Iowa Rule of Criminal Procedure 2.8(2)(*d*), the legislature is sitting in the courthouse and exercising power over inferior tribunals.

Further, remarkably, it is the State's position that in order to determine whether there is "good cause" to avoid the statute's prohibition of direct appeals, the court needs to promulgate procedures to enable it to make an early determination on the issue separate from consideration of the merits of an appeal. The state believes, apparently, that the legislature can by statute require this court to promulgate rules regarding the manner in which it exercises its constitutional responsibilities. The separation-of-powers implications are obvious.

As I see it, the majority opinion permits the legislature to engage in jurisdiction stripping of the Iowa Supreme Court and of the district courts and to invade the supervisory powers of this court. If the legislature has the power to jurisdiction strip this court in the area of constitutional claims, it has the power to destroy the role of the courts in enforcing constitutional norms. This simply cannot be permitted consistent with separation of powers. Although the restriction of supreme court subject matter jurisdiction in this case is relatively narrow, the principle appears unlimited. The power to limit or restrict subject matter jurisdiction of

constitutional claims would permit the legislature to eliminate the role of the supreme court in our constitutional system.

And, when it comes to ensuring that constitutional norms are enforced, the supreme court has the constitutional authority to adopt rules. The legislature does not have such authority. We have adopted Iowa Rule of Criminal Procedure 2.8(2)(*b*) to implement due process requirements in guilty pleas. That is something for us to do, not the legislature.

**III. Challenges to Classifications in S.F. 589 Based on Due Process and Equal Protection.**

1. *Introduction.* S.F. 589 is a classification scheme. Ineffective-assistance-of-counsel claims and certain guilty plea claims are treated differently than other constitutional or statutory claims that may be brought on direct appeal. And, guilty pleas resulting in conviction of a class "A" felony are treated differently than guilty pleas resulting in convictions of other crimes. Equal protection analysis applies to classifications in criminal procedure, including an appeal system. *See, e.g., Schilb v. Kuebel*, 404 U.S. 357, 364–65, 92 S. Ct. 479, 484–85 (1971) (applying equal protection analysis to bail statute); *People v. Wright*, 725 N.E.2d 811, 814 (Ill. App. Ct. 2000) (noting that a system of appeal must comply with equal protection).

2. *Similarly situated compared to what?* In its equal protection analysis, the majority declares that the various categories of guilty pleas are not similarly situated because they are different. But that is not equal protection analysis. As we have noted, "no two groups are identical in every way." *Quest v. Iowa State Bd. of Tax Rev.*, 829 N.W.2d 550, 561 (Iowa 2013). Men and women are different, but that does not mean that all classifications that treat men and women differently pass equal

protection muster. A person who can lift one hundred pounds is different from a person who can lift twenty-five pounds, but that does not mean a classification that provides greater pay for one group based on sedentary work requiring no lifting passes muster.

You simply cannot engage in equal protection analysis unless you identify the purpose of the classification. And the majority does not identify the purpose of the classification. Why is it, exactly, that ineffective assistance and guilty pleas are treated differently from other claims? Why is it that guilty pleas arising out of class "A" felonies are treated differently than other guilty pleas?

But to treat the guilty pleas differently because they have some differences from other cases without understanding the underlying purpose of the statute leads nowhere. As noted by the United States Supreme Court, the first step is to identify the objective of the statute and then the second step is to determine whether the classifications are rationally related to the purposes of the statute. *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S. Ct. 251, 253–54 (1971). We have made a similar observation, noting that the relationship between two classes must be evaluated "in relation to *any particular goal*" (emphasis added) of the legislation. *Bierkamp v. Rogers*, 293 N.W.2d 577, 584 (Iowa 1980) (en banc). The majority skips the first step.

The reason why no purpose has been identified may be because there is no purpose that rationally supports the classification. If the purpose is conservation of judicial resources, the classifications seem hard to justify. As we have noted, "preserving ineffective assistance of counsel claims that can be resolved on direct appeal wastes time and resources." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004). If it is true that preserving cases for postconviction relief that can be decided on direct

appeal wastes time and resources, what purpose do the classifications in S.F. 589 advance? The majority opinion does not tell us.

If the purpose is elimination of frivolous appeals, the classification permitting challenges to convictions based on guilty pleas based on class "A" felonies but not other crimes with lesser punishment is clearly invalid under existing equal protection precedent. Indeed, in *Rinaldi v. Yeager*, the United States Supreme Court stated that a classification based on the level of punishment has no relationship to the purpose of discouraging frivolous appeals. 384 U.S. 305, 309–10, 86 S. Ct. 1497, 1500 (1966). And, is it permissible to put a penalty on valid claims in order to stem frivolous claims that can be quickly identified and appropriately handled by an appellate court rather than commencing a new postconviction-relief proceeding?

The above questions are not considered in the majority opinion. Under the approach of the majority, the implication is that legislative purpose is not important and that *any* legislative classification that disadvantages those who plead guilty is valid. That is not equal protection analysis under *Reed* or *Bierkamp*. It is a conclusion only.

3. *Level of scrutiny.* A question in conventional equal protection analysis is: What level of scrutiny should be applied in evaluating the classification involved? If there is a due process right to a first appeal, and if the postconviction-relief alternative does not provide effective assistance of counsel, as I also maintain, then strict scrutiny would be the appropriate equal protection test because the legislature would be depriving the litigants affected by S.F. 589 of a fundamental right. *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 238 (Iowa 2002) (stating that when the asserted right is fundamental, strict scrutiny is the appropriate analysis). Of course, the classification would already be void as violating

due process and the right to effective assistance of counsel, and the equal protection analysis would be of little additional consequence.

Yet, it is possible that strict scrutiny of the classifications created by S.F. 589 would not be applied *if the only claim relates to the differences in procedure of a nonconstitutional dimension.* If the challenge to the classification has no constitutional dimension, an argument may be made that the incidental burdens resulting from S.F. 589 should be evaluated under a rational basis test.

Even so, our review of the rational relationship between the classifications and the purpose of the statute is deferential but not toothless. *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 9 (Iowa 2004). "[T]he court will undertake some examination of the credibility of the asserted factual basis for the challenged classification rather than simply accepting it at face value." *Id.* at 8 n.4. Thus, defenders of a statute cannot simply declare that a statute has a legitimate goal and triumphantly conclude its validity. While the distinctions created by S.F. 589 would likely not survive strict scrutiny under a valid constitutional challenge, they also might fail under a heightened rational basis test. But again, we cannot conduct rational basis review unless we understand the purpose of the statute.

4. *Equal protection precedents.* There are four important United States Supreme Court equal protection cases involving classifications in criminal procedure. The first case is *Rinaldi v. Yeager*, 384 U.S. 305, 86 S. Ct. 1497. Here, a statute imposed transcript costs on indigents unsuccessful on appeal who were incarcerated but not on those who were on probation or only paid a fine. *Id.* at 308, 86 S. Ct. at 1499. The *Rinaldi* court found that the distinction based on punishment had no relationship to the purpose of the statute of deterring frivolous appeals. *Id.* at 309–10,

86 S. Ct. at 1500. As noted by the court, "[b]y imposing a financial obligation only upon inmates of institutions, the statute inevitably burdens many whose appeals, though unsuccessful, were not frivolous, and leaves untouched many whose appeals may have been frivolous indeed." *Id.* at 310, 86 S. Ct. at 1500. The level of punishment had no relationship to the question of stemming frivolous appeals. *Id.* at 309–10, 86 S. Ct. at 1500. In other words, with respect to the purpose of the statute, it was both over inclusive and under inclusive to the point that it did not survive rational basis scrutiny.

In a second case, *Groppi v. Wisconsin*, the Supreme Court considered a statute that permitted a change of venue in felony cases but not for misdemeanors. 400 U.S. 505, 507, 91 S. Ct. 490, 492 (1971). The court found that this statute deprived those on trial for misdemeanors the opportunity to show community prejudice might require a change in venue. *Id.* at 511, 91 S. Ct. at 494.

In *Mayer v. City of Chicago*, the United States Supreme Court considered an Illinois Supreme Court rule which provided trial transcripts only in felony cases. 404 U.S. 189, 190–93, 92 S. Ct. 410, 412–14 (1971). Relying on *Groppi*, the Supreme Court considered the classification between felony and other cases as an "unreasoned distinction." *Id.* at 196, 92 S. Ct. at 415. The *Mayer* Court also emphasized that there was a prohibition against pricing an indigent party out of an appeal. *Id.* at 196–97, 92 S. Ct. at 416.

Finally, in *Schilb v. Kuebel*, the Supreme Court considered a bail scheme where defendants awaiting trial had a series of options to gain release. *Schilb*, 404 U.S. at 358–64, 92 S. Ct. at 481–84. One option involved a 1% handling fee. *Id.* at 360–61, 92 S. Ct. at 482. The Supreme Court regarded the detail as incidental only and therefore the classification

did not give rise to an equal protection problem.  *Id.* at 365–71, 92 S. Ct. at 485–87.

5. *Discussion.*  If S.F. 589 violates due process and the right to counsel, then strict scrutiny would likely apply to the classifications. *Hernandez-Lopez*, 639 N.W.2d at 238.  On the other hand, if there are no fundamental rights or interests at stake on due process and the right to counsel, then something less than strict scrutiny would apply.  As noted by one court, "[W]hen a statute affects the right to bring an appeal, the rational basis test applies to those portions of a statute that do not affect the fundamental right to appeal but merely regulate it."  *See State v. Ramirez*, 871 P.2d 237, 243 (Ariz. 1994) (in banc).  Here, Tucker did not raise the due process and right to counsel issues arising from the postconviction-relief procedure reviewed earlier, and as a result, the opinion today does not consider a challenge based upon those unraised questions.

Regardless of the standard to apply, we must explore the purpose of the statute in equal protection analysis.  Without understanding the purpose of a classification, it is impossible to measure its rationality.  Is the purpose conservation of judicial resources?  Is there a rational basis for directing all ineffective-assistance-of-counsel provisions to postconviction relief?  For those cases currently handled by this court on direct appeal, it certainly imposes an additional burden on defendants and the courts by injecting another layer of judicial review with its attendant delay and additional cost.

The second classification involves separating cases involving guilty pleas for class "A" felonies from other guilty pleas.  Again, apparently, the purpose is to save judicial resources.  This distinction is problematic.  The level of the punishment has nothing to do with the question of whether

there have been legal infirmities in the guilty plea. At least two broad categories of guilty pleas—those that involve the question of whether there is a factual basis to support a conviction, and those involving compliance with Iowa Rule of Criminal Procedure 2.8(2)(*b*)—raise purely legal issues. It is pointless to send these cases to postconviction relief. As applied to these broad categories, the distinction made in S.F. 589 between guilty pleas for class "A" felonies and other guilty pleas does not have a rational basis, at least to the extent that saving judicial resources is the purpose for the distinction. The distinction between guilty pleas for class "A" and other felonies runs dead into the teachings of *Rinaldi* and *Mayer*. *See Rinaldi*, 384 U.S. at 309–10, 86 S. Ct. at 1500; *Mayer*, 400 U.S. at 196, 92 S. Ct. at 415. To the extent the majority opinion is to the contrary, it is erroneous.

But, in this case, there is no need for equal protection analysis because under pre-S.F. 589 law, Tucker's claim would be handled in the same fashion as it is today. Thus, the majority's ruling on equal protection is a hypothetical one. So, I would hold our fire for another day. In any event, we cannot declare broadly that the statutory classifications survive equal protection analysis in all their applications with an analysis that simply declares that the members of the classifications in the statute are not similarly situated because they are different without considering the underlying purpose of the statute. And, whatever the statutory purpose, an equal protection challenge based upon the right to a first appeal and right to counsel has not been decided, even hypothetically, by today's ruling.

## IV. Conclusion.

On the narrow ground that the guilty plea in this case cannot be resolved on direct appeal because it raises factual issues, I concur in the

result. That is all that is needed to decide this case. I dissent, however, from the majority's constitutional excursions in this case for the reasons expressed in this opinion.

**McDERMOTT, Justice (concurring specially).**

I join the majority opinion except as to division IV, in which I concur in the result. Although I reach the same result as the majority on Tucker's separation-of-powers arguments, I break with the majority's separation-of-powers analysis that adopts the approach in *State v. Thompson*, 954 N.W.2d 402 (Iowa 2021).

As I discussed in my dissent in *Thompson*, I disagree that our court's examination of an alleged separation-of-powers violation requires the "three aspects" analysis that the majority describes. *See generally id.* at 419–25 (McDermott, J., concurring in part and dissenting in part). Stated simply, the separation-of-powers doctrine is violated if one branch of government seeks to use powers granted by the constitution to another branch. *See State v. Phillips*, 610 N.W.2d 840, 842 (Iowa 2000) (en banc). The analysis thus requires two basic inquiries: what type of power is being exercised, and which branch is exercising it. *See id.*; *see also Morrison v. Olson*, 487 U.S. 654, 705, 108 S. Ct. 2597, 2626 (1988) (Scalia, J., dissenting); Martin H. Redish & Elizabeth J. Cisar, *"If Angels Were to Govern": The Need for Pragmatic Formalism in Separation of Powers Theory*, 41 Duke L.J. 449, 488 (1991).

The majority correctly recites that the Iowa Constitution directs the legislature "to provide for a general system of practice in all the courts of this state." Iowa Const. art. V, § 14. But this provision doesn't bestow upon the legislature exclusive power to dictate the court's rules of practice. *See Iowa C.L. Union v. Critelli*, 244 N.W.2d 564, 569 (Iowa 1976) (en banc). The legislature may not, for example, infringe core judicial functions through the implementation of procedural rules. "Certain implied powers must necessarily result to our Courts of justice from the nature of their

institution." *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812). Danger lies not only when one branch "directly and completely" performs the functions of a separate branch but also when one branch "posses[es], directly or indirectly, an overruling influence over the others in the administration of their respective powers." *The Federalist No. 48*, at 332 (James Madison) (Jacob E. Cooke ed., 1961).

But in this case, both statutes that Tucker challenges concern appellate jurisdiction to hear his case in the first place. The Iowa Constitution provides that the supreme court "shall have appellate jurisdiction only in cases in chancery, and shall constitute a court for the correction of errors at law, under such restrictions as the General Assembly may, by law, prescribe." Iowa Const. art. V, § 4. The legislature in section 814.6(1)(*a*) provides a "restriction" for appeals in which the defendant pleaded guilty to crimes other than class "A" felonies or otherwise can't establish "good cause" for the appeal. Iowa Code § 814.6(1)(*a*) (2019). And the legislature in section 814.7 provides a "restriction" for direct appeal of ineffective assistance of counsel claims in criminal cases. *Id.* § 814.7. In answering our two inquiries in this case, the particular "power" exercised (and challenged) is the power to decide which avenue of appellate review is deemed appropriate for particular types of cases. *Shortridge v. State*, 478 N.W.2d 613, 615 (Iowa 1991), *superseded by statute on other grounds*, 1992 Iowa Acts ch. 1212, § 38 (codified at Iowa Code § 822.9 (1993)). This power appropriately rests with the legislature. *Id.*

The framers warned of the legislature's ability to "mask under complicated and indirect measures, the encroachments which it makes" on the other branches. *The Federalist No. 48*, at 334 (James Madison). Restrictions of this court's appellate jurisdiction under article V, section 4

violate separation-of-powers principles if they "disarm the court of the means required to fulfill the core judicial power" secured in the Iowa Constitution. *Thompson,* 954 N.W.2d at 421. But these two statutes effectuate no such disarmament. The constitutional separation of powers serves as "a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 239, 115 S. Ct. 1447, 1463 (1995). Testing the challenged statutes using a different tool than the majority, I nonetheless arrive at the same conclusion as the majority and thus concur specially in division IV of the majority's holding that neither section 814.6(1)(a) nor section 814.7 violates separation of powers principles, and I concur in all other parts of the majority's opinion.

Christensen, C.J., joins this special concurrence.